[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 02-12462

_____

D. C. Docket No. 98-00520 CV-2-FTM

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**March 25, 2004**
**THOMAS K. KAHN**
**CLERK**

CARY A. CLIFF, individually and
on behalf of all others similarly situated,

                                        Plaintiff-Appellant,

                    versus

PAYCO GENERAL AMERICAN CREDITS, INC.,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(March 25, 2004)**

Before DUBINA, HILL and COX, Circuit Judges.

COX, Circuit Judge:

Cary A. Cliff appeals the district court's denial of his motion for class certification. Cliff brought this class action against OSI Collection Services, Inc. (OSI), formerly Payco General American Credits, Inc., alleging violations of the federal Fair Debt Collection Practices Act ("the FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, and the Florida Consumer Collection Practices Act ("the Florida Act"), Fla. Stat. §§ 559.55 *et seq.* The district court concluded that Cliff could not satisfy the numerosity requirement for a class action. Cliff raises four issues on appeal that could affect the size of the class. Because we disagree with the district court's resolution of one issue that could affect the size of the class, we vacate the court's denial of class certification and remand for further proceedings.

## I. BACKGROUND

Cliff, a Florida resident, graduated from law school in 1987 and has been a practicing attorney since 1988.[1] He financed his college and law school education in part through student loans, and after he completed his education, he consolidated his federal student loans through a consolidation program administered by Sallie Mae Servicing Corporation (Sallie Mae). His consolidation loan was guaranteed by Great Lakes Higher Education Guaranty Corporation (Great Lakes).

---

[1]    Unless otherwise noted, the facts are drawn from the parties' statements of undisputed material facts (filed in connection with OSI's motion for partial summary judgment) and the district court's order.

In 1995, Cliff failed to make the required payments on his consolidation loan, and his loan formally entered default in November of 1995. Sallie Mae assigned his loan to Great Lakes, the guarantor, and the loan was serviced on Great Lakes' behalf by OSI Collection Services, Inc. Cliff contacted OSI and agreed to enter a repayment rehabilitation program, but he failed to make any payments on his loan from 1996 to 1998 because he believed that Sallie Mae had granted him a forbearance during a prior telephone conversation and because he objected to the assessment of collection fees. Cliff does not dispute the unpaid principal amount of the debt, which was approximately $27,000 at the time of default.

On October 22, 1997, OSI issued a "Notice Prior to Wage Withholding" to Cliff. The notice showed that Cliff owed $35,935.61 and stated that if Cliff did not enter into a new written repayment arrangement with OSI by November 21, 1997, OSI would issue a garnishment order requiring Cliff's employer to begin withholding and paying over his wages pursuant to the provisions of the Higher Education Act (HEA), 20 U.S.C. §§ 1001 *et seq*.

Under the wage garnishment provision of the HEA, a guaranty agency may garnish the disposable pay of a debtor to collect the amount owed if the debtor has failed to make payments required under a repayment agreement. 20 U.S.C. § 1095a(a). Debtors who are subject to garnishment are statutorily entitled to a hearing

"concerning the existence or the amount of the debt" and, in certain cases, "concerning the terms of the repayment schedule." *Id.* § 1095a(a)(5). If the debtor requests a hearing on or before the 15th day following the mailing of the pre-garnishment notice, a hearing must be provided *before* a garnishment order is issued to the debtor's employer. *Id.* § 1095a(b). If the debtor requests a hearing more than 15 days after the pre-garnishment notice is mailed, however, the debtor is still entitled to a hearing but the hearing need not be conducted before garnishment begins. *Id.*

Cliff requested a hearing, but there is a dispute as to whether he requested a hearing within 15 days of receiving the pre-garnishment notice.[2] On December 16, 1997, OSI sent a letter to Cliff stating that his request for a hearing was denied, though the HEA does not expressly authorize the denial of a hearing request. The letter stated that Cliff's wages would be garnished if he did not make other arrangements to make payments on the debt. He did not make any payments, and in January of 1998, OSI served a garnishment order on his employer. Cliff's employer began withholding $110 per week in February of 1998, and his employer continues to withhold and pay over his wages pursuant to the order of garnishment.

---

[2]     OSI contends that Cliff did not return his hearing request by November 6, 1997, the last day in the 15-day period. Cliff counters that the pre-garnishment notice expressly stated that he would be entitled to a pre-garnishment hearing if his hearing request was received by November 11, and he claims that he sent the request via overnight delivery on November 8 to arrive November 9. OSI's records indicate that the request was not received until November 13.

## II. PROCEDURAL HISTORY

On December 16, 1998, Cliff filed suit against OSI.[3]  Cliff alleges that OSI garnished his wages in a manner that violates the wage garnishment provision of the HEA, 20 U.S.C. §§ 1095a(a)(5), (b).  Based on the alleged HEA violations, Cliff sought damages and injunctive relief from OSI under both the federal Fair Debt Collection Practices Act and the Florida Consumer Collection Practices Act.[4]

From the genesis of this lawsuit, Cliff sought to proceed as a class action plaintiff under Fed. R. Civ. P. 23.  But the definition of the class which Cliff sought to represent changed three times during the litigation.  In his original complaint of

---

[3]        Cliff also named Great Lakes and then-Secretary of the United States Department of Education Richard W. Riley, in his official capacity, as defendants.  The district court granted Riley's motion to dismiss and Great Lakes' motion for summary judgment.  OSI (formerly Payco) is the only defendant who is a party to this appeal.

[4]        Cliff alleges that OSI violated a handful of provisions of the FDCPA: § 1692e(2), falsely representing the character, amount or legal status of a debt or the compensation which may be received by the debt collector; § 1692e(4), representing or implying that nonpayment will result in garnishment when such action is not lawful; § 1692e(5), threatening to take action that cannot be legally taken or that is not intended to be taken; § 1692e(10), using false representations and deceptive means to collect or attempt to collect a debt or information about a consumer; § 1692e(11), failing to disclose clearly in the initial communication that the debt collector is attempting to collect a debt and that information acquired will be used for that purpose; § 1692f(1), collecting amounts that are not expressly authorized by the agreement creating the debt or permitted by law; § 1692g, failing to give notice as required by the statute; and § 1692i, bringing a legal action (the garnishment) in an improper venue.  Cliff also alleges a violation of § 559.72(9) of the Florida Act, which prohibits a debt collector from claiming, attempting, or threatening to enforce a debt when the debt collector knows that the debt is not legitimate, or asserting the existence of some other legal right when the debt collector knows that the right does not exist.

December 16, 1998, Cliff limited his class to Florida residents.[5]  But almost seven months later, on July 6, 1999, Cliff filed an Amended Complaint which defined two distinct classes: a class of Florida consumers alleging violations of the Florida Act and a separate class of nationwide consumers alleging violations of the FDCPA and the Constitution.  These class definitions also reflected the difference between the one-year statute of limitations under the FDCPA and the more generous four-year statute of limitations under Florida law.[6]  On March 1, 2000, Cliff filed a motion for class certification asking the court to certify a Florida class and a nationwide class.

While Cliff's motion for class certification was pending, OSI filed a motion for summary judgment on the FDCPA claims and the Florida Act claim.  The court

---

[5]  "Cliff sues on his own behalf and, as class representative, sues on behalf of all other consumers in Florida who have been the victims of the illegal acts of the Secretary [Riley], Payco [now OSI] and/or Great Lakes in violation of the FDCPA, the Florida Act, and/or the United States Constitution, as detailed below, beginning one year prior to the date the Complaint was filed." (R.1-1 ¶ 12.)

[6]  Class I included "[c]onsumers residing in Florida who have been the victims of the illegal acts of . . . Payco [now OSI] and/or Great Lakes in violation of the Florida Act, as detailed below, beginning four years prior to the date the original Complaint was filed."
Class II included "[c]onsumers residing in any of the United States, including Florida, who have been the victims of the illegal acts of the Secretary [Riley], Payco [now OSI] and/or Great Lakes in violation of the FDCPA and/or the United States Constitution, as detailed below, beginning one year prior to the date the original Complaint was filed." (R.1-37 ¶ 12.)
The Amended Complaint was not entirely clear about the scope of Cliff's class action: at one point, Cliff claimed to bring the class action "on behalf of himself and on behalf of all other consumers *in Florida.*" (R.1-37 ¶ 2 (emphasis added).)  To clear up this inconsistency, Cliff filed a Second Amended Complaint on July 19, 1999, which states that Cliff brought this class action "on behalf of himself and on behalf of all other consumers," (R.1-41A ¶ 2), not merely consumers "in Florida."

granted summary judgment in OSI's favor on Cliff's Florida Act claim. The court

concluded that Congress's enactment of the HEA expressly preempted state law, and

thus precluded Cliff and any class members from seeking relief under the Florida Act.

Based on this grant of partial summary judgment, the court denied Cliff's motion to

certify a nationwide class and a separate Florida class and invited Cliff to file an

amended motion for class certification.

Shortly thereafter, Cliff filed another motion for class certification which

defined only a nationwide class. He amended the class definition to include:

- All student loan debtors
- to whom OSI sent [a garnishment order] or otherwise caused wage garnishment to begin
- and who are shown by OSI's records to have timely requested a hearing before garnishment
- but who neither received nor waived a hearing,
- from December 16, 1997 to the date of certification.

(R.4-132 ¶ 17.) Cliff estimated that at least 286 debtors fell within the defined class.

In his motion, Cliff requested an evidentiary hearing to resolve any factual disputes.

A dispute ensued between Cliff and OSI regarding the number of individuals

who satisfied the criteria for class membership. This dispute revolved around two

issues. The first issue was "relation back." Cliff does not allege that OSI violated the

7

wage garnishment provision of the HEA after June 1, 1998.[7]  But Cliff did not purport to represent consumers outside Florida until he filed his Amended Complaint on July 6, 1999.  If Cliff's representation of consumers outside Florida does not relate back to the original complaint, all of the FDCPA claims of consumers outside Florida are barred by the one-year statute of limitations.

The second issue focused on the term "timely" in Cliff's class definition.  OSI argued that a "timely" request referred to only those requests made within 15 days of the mailing of the pre-garnishment notice.  Cliff, by contrast, argued that "timely" requests would include those requests made within 15 days (which entitled the debtor to a pre-garnishment hearing) as well as those requests made after the 15-day period but before garnishment began (which entitled the debtor to a hearing, but not before garnishment).

After OSI filed its response to Cliff's class certification motion, Cliff requested an evidentiary hearing or, in the alternative, leave of the court to file a reply brief. The court granted Cliff's request to file a reply brief (in which he again requested an

---

[7]     Prior to June 1, 1998, OSI sent debtors a pre-garnishment notice prescribed by the Department of Education.  The notice informed debtors that they would be advised whether their hearing request had been granted or denied, even though the HEA does not contemplate a denial of a debtor's request.  OSI concedes that prior to June 1, 1998, some hearing requests, including Cliff's, were denied.  The Department of Education subsequently revised the notice to eliminate the language that appeared to authorize denials. OSI asserts that since June 1, 1998, it has conducted a hearing or obtained a waiver in response to all hearing requests, and Cliff does not challenge this assertion.

evidentiary hearing). Upon reading Cliff's reply, the court instructed OSI to answer an interrogatory about the number of debtors who satisfied the criteria for class membership to enable the court to determine if class certification was appropriate. Based on OSI's interrogatory answer, Cliff contended that 107 debtors fell within the class, while OSI contended that only five or, at most, nine debtors fell within the class. Cliff also requested either an evidentiary hearing or additional discovery and briefing time.

The court denied Cliff's request and denied his motion for class certification. The court concluded that the Amended Complaint did not relate back because the original complaint did not give adequate notice to OSI that Cliff would be representing a nationwide class and because the relation back would unfairly prejudice OSI. As a result, the statute of limitations barred Cliff from pursuing any claims on behalf of consumers outside Florida. The court also held, based on the Complaint and his motion for class certification, that Cliff's use of "timely" in the class definition limited the class to persons who requested a hearing within the 15-day period. Because Cliff could not pursue any claims on behalf of consumers outside Florida, and because the class was limited to individuals who requested a hearing within the 15-day period, the court agreed with OSI that the proposed class consisted of no more than nine Florida consumers. The court concluded that Cliff failed to

satisfy the numerosity requirement of Fed. R. Civ. P. 23(a)(1) and denied his motion for class certification.

Cliff filed a motion for reconsideration, in which he made yet another request for an evidentiary hearing. He also asked the court to modify the class definition by omitting the word "timely." OSI, in response, argued that the class definition should not be revised for two reasons: (1) Cliff cannot represent debtors who made requests within 15 days and debtors who made requests after 15 days because he could not satisfy the typicality requirement as to one of the groups, and (2) another change in the class definition would cause further delay and could require the reopening of discovery. The court denied Cliff's motion for reconsideration: "Upon review, the Court concludes that plaintiff does not raise new issues which would convince the Court to reverse its prior decision." (R.5-166 at 2.) Cliff petitioned this court for discretionary interlocutory review under Fed. R. Civ. P. 23(f), and we agreed to hear his interlocutory appeal.

## III. ISSUES ON APPEAL

Before the district court could certify Cliff's proposed class, Cliff had to demonstrate that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a); *see Franze v. Equitable Assurance*, 296 F.3d 1250, 1252-53 (11th Cir. 2002). The district court concluded that Cliff failed to

10

satisfy this numerosity requirement. Cliff disagrees, and asks us to consider four issues that potentially affect the size of the class: (1) whether the HEA preempts the Florida Consumer Collection Practices Act; (2) whether the court abused its discretion when it concluded that Cliff's Amended Complaint did not relate back; (3) whether the district court erred when it construed "timely"; and (4) whether the district court abused its discretion when it denied Cliff's requests for an evidentiary hearing and additional discovery.

## IV. STANDARDS OF REVIEW

We review de novo the district court's conclusion that the HEA preempts Cliff's claim under the Florida Consumer Collection Practices Act. *Irving v. Mazda Motor Corp.*, 136 F.3d 764, 767 (11th Cir. 1998). We review the district court's ruling that Cliff's amendment does not relate back under Fed. R. Civ. P. 15(c) for an abuse of discretion, but the findings of fact needed to apply Fed. R. Civ. P. 15(c) are reviewed for clear error. *Powers v. Graff*, 148 F.3d 1223, 1226 (11th Cir. 1998). As a general rule, we review denial of class certification for an abuse of discretion, *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1271 (11th Cir. 2001), and to the extent that we construe Cliff's brief to argue that the district court should have granted his motion for reconsideration and omitted the word "timely" from the class definition, we also review the denial of his motion for reconsideration for an

abuse of discretion. *Sanderlin v. Seminole Tribe of Fla.*, 243 F.3d 1282, 1285 (11th Cir. 2001). We review the district court's discovery rulings, as well as its denial of a request for an evidentiary hearing, for an abuse of discretion. *Wright v. AmSouth Bancorporation*, 320 F.3d 1198, 1205 (11th Cir. 2003) (discovery rulings); *Brownlee v. Haley*, 306 F.3d 1043, 1067 n.19 (11th Cir. 2002) (denial of evidentiary hearing).

## V. DISCUSSION

In Part A, we examine whether the HEA preempts Cliff's claim under the Florida Act. In Part B, we consider whether the district court abused its discretion in ruling that Cliff's Amended Complaint did not relate back. In Part C, we address the court's treatment of the term "timely" in Cliff's class definition. In Part D, we determine whether the court abused its discretion when it denied Cliff's requests for an evidentiary hearing and additional discovery.

### A. Preemption

The Supremacy Clause of Article VI of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. When we consider issues that arise under the Supremacy Clause (i.e., preemption issues), we start with the assumption that the historic police powers of the states are not superseded by federal law unless preemption is the clear and manifest

12

purpose of Congress. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S. Ct. 1146, 1152 (1947). Therefore, "[t]he purpose of Congress is the ultimate touchstone" of preemption analysis. *Retail Clerks Int'l Ass'n, Local 1625 v. Schermerhorn*, 375 U.S. 96, 103, 84 S. Ct. 219, 223 (1963).

Congress's intent to preempt state law may be explicitly stated in the language of a federal statute or implicitly contained in the structure and purpose of the statute. *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S. Ct. 1305, 1309 (1977). Bearing in mind this distinction between express and implied preemption, the Supreme Court has identified three types of preemption: (1) express preemption; (2) field preemption; and (3) conflict preemption. *Wisc. Public Intervenor v. Mortier*, 501 U.S. 597, 604-05, 111 S. Ct. 2476, 2481-82 (1991); *This That & The Other Gift & Tobacco, Inc. v. Cobb County, Ga.*, 285 F.3d 1319, 1322 (11th Cir. 2002). "Express preemption" occurs when Congress has manifested its intent to preempt state law explicitly in the language of the statute. If Congress does not explicitly preempt state law, however, preemption still occurs when federal regulation in a legislative field is so pervasive that we can reasonably infer that Congress left no room for the states to supplement it – this is known as "field preemption" or "occupying the field." *English v. General Elec. Co.*, 496 U.S. 72, 79, 110 S. Ct. 2270, 2275 (1990). And even if Congress has neither expressly preempted state law nor occupied the field, state law is preempted

13

when it actually conflicts with federal law. "Conflict preemption," as it is commonly known, arises in two circumstances: when it is impossible to comply with both federal and state law and when state law stands as an obstacle to achieving the objectives of the federal law. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372-73, 120 S. Ct. 2288, 2294 (2000).

### 1. Overview of the Applicable Statutes

Congress enacted the Higher Education Act of 1965 to address the pressing need to provide financial assistance to students in higher education. Title IV of the HEA authorizes the Secretary of Education to administer several federal student loan and grant programs, including the Federal Family Education Loan Program (the Stafford Loan Program), federal PLUS loans, federal consolidation loans, and federal Perkins loans. Under these programs, lenders make guaranteed loans under favorable terms to students and their parents, and these loans are guaranteed by guaranty agencies and ultimately by the federal government.

Because the United States guarantees these loans, the Secretary of Education has an interest in protecting the United States against the risk of unreasonable loss by ensuring that lenders employ due diligence in the collection of these loans. 20 U.S.C. § 1078(c)(2)(A). The HEA authorizes the Secretary of Education to promulgate regulations to carry out the purposes of these programs, and these regulations apply

14

to third-party debt collectors (such as OSI) that attempt to collect loans on behalf of lenders and guaranty agencies. *See, e.g.*, 20 U.S.C. § 1078-3(d)(4); 20 U.S.C. § 1082(a)(1). It comes as no surprise that the Secretary has issued several regulations that articulate the standards for diligent collection of student loans. *See* 34 C.F.R. § 682.410; 34 C.F.R. § 682.411. For example, after a borrower misses a payment, the lender must send at least one written notice or collection letter to the borrower within 15 days that notifies the borrower of the delinquency. 34 C.F.R. § 682.411(c). If the debtor is still delinquent after 15 days, the lender must send four collection letters to the borrower and make four diligent efforts to contact the borrower by telephone; one telephone contact must occur on or before the 90th day of delinquency, one must occur after the 90th day of delinquency, and at least two of the collection letters must warn the borrower that if the loan is not paid, the default will be reported to all national credit bureaus. 34 C.F.R. § 682.411(d). These are just a few of the due diligence standards promulgated by the Secretary of Education, and they serve as a guide for lenders, guaranty agencies, and third-party debt collectors engaged in pre-litigation collection efforts.

If these diligent collection activities are unsuccessful, guaranty agencies may seek recourse through a valuable tool that Congress has placed at their disposal: wage garnishment. According to 20 U.S.C. § 1095a:

> Notwithstanding any provision of State law, a guaranty agency . . . may garnish the disposable pay of an individual to collect the amount owed by the individual, if he or she is not currently making required repayment . . . .

20 U.S.C. § 1095a(a). Under the wage garnishment provision of the HEA, a guaranty agency may order an employer to withhold up to ten percent of the debtor's disposable pay. *Id.* § 1095a(a)(1). The debtor is entitled to notice that the guaranty agency intends to initiate garnishment as well as an opportunity to enter into a new repayment agreement. *Id.* §§ 1095a(a)(2), (a)(4). As previously noted, the debtor is also entitled to a hearing concerning the existence or the amount of the debt (and, in some cases, the terms of the repayment schedule), but the timing of this hearing depends upon the timing of the debtor's request. *Id.* §§ 1095a(a)(5), (b).

While the HEA endows debtors with certain rights during the wage garnishment process, the HEA expressly empowers only the Secretary of Education – not debtors – with the authority to enforce the HEA and rectify HEA violations. 20 U.S.C. §§ 1070(b), 1071, 1082, 1094. It is well-settled that the HEA does not expressly provide debtors with a private right of action. *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1221 (11th Cir. 2002) (listing cases that found no express private right of action under the HEA); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) ("There is no express right of action under the HEA except for

16

suits brought by or against the Secretary of Education."). And this court recently joined several other circuits when it concluded that the enactment of the HEA did not create an implied private right of action. *McCulloch*, 298 F.3d at 1224-25.

But debtors may be able to seek a remedy through another federal statute, the Fair Debt Collection Practices Act. The FDCPA applies to debt collectors in general and provides debtors with a remedy for abusive, fraudulent, and deceptive collection practices. The FDCPA sets forth a non-exclusive "laundry list" of prohibited collection practices, each giving rise to a private right of action under 15 U.S.C. § 1692k. *See* 15 U.S.C. §§ 1692d, 1692e, 1692f. While the HEA, standing alone, does not expressly or impliedly authorize a private right of action, the Secretary of Education has expressed the belief that third-party debt collectors acting on behalf of guaranty agencies to collect federal student loans must comply with the FDCPA. Notice of Interpretation, Stafford Loan, Supplemental Loans for Students, PLUS, and Consolidation Loan Programs, 55 Fed. Reg. 40,120, 40,121 (Oct. 1, 1990) (observing that "the Secretary [of Education] took particular note of the existence of Federal law that regulated the conduct of . . . third party collectors of defaulted student loans" and concluded that these debt collectors "remain subject to the FDCPA"). And both parties here agree that a debtor may pursue an action under the FDCPA when a third-party debt collector, by violating a provision of the HEA, also violates the FDCPA.

Cliff, on behalf of himself and the class, has alleged just such a claim under the FDCPA: he asserts that OSI violated the FDCPA when it denied his hearing request on December 16, 1997, and again when it issued a garnishment order on January 20, 1998, because OSI did not have the legal right under the HEA to take such action. *See supra* note 4.

But Cliff also contends that the alleged HEA violation constitutes an actionable violation of the Florida Consumer Collection Practices Act, the Florida statute that provides debtors with protection from abusive, fraudulent, and deceptive collection practices. Like the FDCPA, the Florida Act includes a list of prohibited collection practices that give rise to a private cause of action. Fla. Stat. §§ 559.72, 559.77. Cliff contends that OSI's conduct violated Fla. Stat. § 559.72(9), which prohibits a debt collector from asserting the existence of a legal right (in this case, the right to deny Cliff's hearing request and garnish his wages) when the collector knows that the right does not exist. We must decide whether Cliff's claim under Fla. Stat. § 559.72(9) is preempted by the HEA.

### 2. Contentions of the Parties

Cliff observes that consumer protection is an area traditionally regulated by the states and he contends that the phrase "Notwithstanding any provision of State law" in the wage garnishment section of the HEA expressly preempts only those state laws

that regulate garnishment. He argues that we are precluded from finding field preemption because Congress has expressly identified the extent to which the HEA preempts state law. Finally, he asserts that the purposes and objectives of the HEA will not be frustrated by permitting him to maintain his cause of action under the Florida Act.

In response, OSI relies on the "Notwithstanding any provision of State law" clause, as the district court did, to conclude that Congress has expressly preempted the Florida Act. But OSI presents its second argument – that the Florida Act actually conflicts with the HEA – with substantially greater force. OSI contends that the enforcement scheme of the HEA, which relies on the authority vested in the Secretary of Education, would be undermined if debtors were entitled to bring claims under state law. OSI also directs our attention to a Notice of Interpretation issued by the Secretary of Education and points to a recent Ninth Circuit decision that relied upon this interpretation to find preemption of state law. Lastly, while OSI concedes that some HEA violations can be pursued under the FDCPA, OSI argues that the Florida Act may impose greater burdens on collection activity than the HEA or the FDCPA and, as a consequence, the Florida Act is preempted.

3. Analysis

a. Express Preemption

We must first consider whether the "Notwithstanding any provision of State law" clause in the wage garnishment section of the HEA expressly preempts the Florida Act claim asserted in this case. We conclude that it does not. The HEA is riddled with isolated preemptive provisions that expressly preempt certain provisions of state law.[8] *See, e.g.*, 20 U.S.C. § 1099 (preempting state disclosure requirements); *Id.* § 1091a(a)(2) (state statutes of limitations); *Id.* § 1078(d) (state usury laws); *Id.* § 1091a(b)(2) (state law infancy defense). The preemptive clause in the wage garnishment section is just such a provision, and when Congress includes a provision that directly addresses the preemption of state law, we have been instructed to "identify the domain expressly pre-empted" by that provision. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517, 112 S. Ct. 2608, 2618 (1992). Congress embedded this preemptive clause in the wage garnishment section of the HEA. But that section,

---

[8]     OSI does not argue that the HEA expressly preempts *all* state law, and we find no language to suggest that it does. Other courts agree. *See, e.g., Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260, 1263 (9th Cir. 1996) (noting that "the HEA does not preempt all state law governing lenders and guarantors of student loans"); *Morgan v. Markerdowne Corp.*, 976 F. Supp. 301, 318 (D.N.J. 1997) (listing cases and noting that "the vast majority of courts that have addressed the issue" have concluded that "the HEA neither explicitly nor implicitly preempts all state law"); *Williams v. Nat'l Sch. of Health Tech., Inc.*, 836 F. Supp. 273, 281 n.7 (E.D. Pa. 1993) ("The Higher Education Act does not generally preempt state law remedies.").

read as a whole, is absolutely silent regarding civil liability under consumer protection laws for violations of the HEA, and thus we decline to conclude that the preemptive clause in § 1095a was intended to preempt the state law claim Cliff asserts in this case.

Garnishment prior to judgment is an exceptional remedy, and many states permit pre-judgment garnishment in limited circumstances subject to strict procedural safeguards. The limitations on pre-judgment garnishment under state law would often foreclose the garnishment remedy contemplated by the HEA, and we believe that Congress had these state laws in mind when it included the preemptive clause in § 1095a. *See, e.g.*, *Nelson v. Diversified Collection Servs., Inc.*, 961 F. Supp. 863, 872 (D. Md. 1997) (concluding that the phrase "Notwithstanding any provision of State law" in § 1095a expressly preempts the writ and service requirements of the Maryland wage garnishment statutes). Accordingly, we conclude that the "Notwithstanding any provision of State law" clause preempts only those provisions of state law that would otherwise prohibit or hinder the ability of a guaranty agency to garnish a debtor's wages. *McComas v. Fin. Collection Agencies, Inc.*, No. CIV. A. 2:96-0431, 1997 WL 118417 at *2 (S.D. W. Va. Mar. 7, 1997) (unpublished) ("The HEA does not expressly preempt West Virginia law relating to debt

collection."). The preemptive clause of § 1095a does not expressly preempt Cliff's claim under the Florida Consumer Collection Practices Act.

b. Field Preemption

Having concluded that the HEA does not expressly preempt Cliff's claim, we turn our attention to field preemption. Notably, OSI does not contend that the HEA so pervasively regulates in the field of debt collection that Congress left no room for the states to supplement it. Moreover, consumer protection is a field traditionally regulated by the states, *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 135, 83 S. Ct. 1210, 1214 (1963), and the Supreme Court has recently reaffirmed that there is a presumption against finding implied preemption of state law in these fields. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S. Ct. 2240, 2250 (1996); *Cipollone*, 505 U.S. at 518, 112 S. Ct. at 2618 (referring to the "presumption against the preemption of state police power regulations"); *see also Fla. East Coast Ry. Co. v. City of West Palm Beach*, 266 F.3d 1324, 1328 (11th Cir. 2001). That presumption is reinforced by those provisions of the HEA, noted earlier, that expressly preempt isolated provisions of state law. Based on the Supreme Court's decision in *Cippollone*, these express preemptive provisions preclude our finding that the HEA "occupies the field."

22

> When Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a "reliable indicium of congressional intent with respect to state authority" . . . "there is no need to infer congressional intent to pre-empt state laws from the substantive provisions" of the legislation. . . . Such reasoning is a variant of the familiar principle of *expression unius est exclusio alterius*: Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted.

*Cipollone*, 505 U.S. at 517, 112 S. Ct. at 2618 (internal citations omitted). In light of this presumption and the HEA's preemptive provisions, as well as OSI's apparent concession that there is no field preemption in this case, we have no trouble concluding that the enactment of the HEA does not "occupy the field" of debt collection practices and thus does not impliedly preempt the Florida Act. *See, e.g., McComas*, 1997 WL 118417 at *2 & *2 n.4 ("The Court also has little difficulty concluding the HEA lacks the comprehensive scope necessary for field preeemption. . . . Congress simply did not intend to occupy the entire field of pre-litigation debt collection activities.").

c.      Conflict Preemption

Conflict preemption, the final step in our preemption analysis, presents a more challenging task in this case. We first consider whether it is possible to comply with the HEA and Fla. Stat. § 559.72(9) at the same time. To comply with the HEA, OSI was required to honor Cliff's request for a hearing and, depending on the timing of

23

Cliff's request, may also have been required to postpone the issuance of a garnishment order pending the outcome of a pre-garnishment hearing. *See* 20 U.S.C. §§ 1095a(a)(5), (b). To comply with Fla. Stat. § 559.72(9), OSI must not have asserted the existence of a legal right which it knew did not exist.

We conclude that a third-party debt collector like OSI can comply with the HEA and Fla. Stat. § 559.72(9) simultaneously. A claim under § 559.72(9) requires the misrepresentation of a "legal right" or an attempt to collect a debt that is "not legitimate." Fla. Stat. § 559.72(9). To determine whether a debt is legitimate or whether a legal right exists, courts must refer to other statutes that establish the legitimacy of a debt and define legal rights. *See Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1363 (S.D. Fla. 2000). The HEA is just such a statute; the HEA and its regulations define the rights of lenders, guaranty agencies, third-party debt collectors, and debtors when federal student loans are collected. Because the claimed violation of Fla. Stat. § 559.72(9) is based upon the alleged misrepresentation of a legal right established by the HEA, we conclude that OSI could have complied with both the HEA and § 559.72(9).

We do not suggest that it is always possible to comply with the HEA (and its regulations[9]) and the Florida Act. For instance, a regulation promulgated under the HEA requires lenders to complete a specific series of contacts (including telephone calls and letters) with a debtor in an attempt to collect a student loan. 34 C.F.R. § 682.411(d). But state laws, including provisions of the Florida Act, might be construed to prohibit one or more of these required contacts.[10] In such cases, other courts have concluded that a claim brought under state law would be preempted by the HEA. *See, e.g.*, *Fischer v. UNIPAC Serv. Corp.*, 519 N.W.2d 793, 798-99 (Iowa 1994) (concluding that a state law claim brought under the Iowa Consumer Credit Code, which requires a debt collector to communicate with a debtor through the debtor's attorney, was preempted by 34 C.F.R. § 682.411, which requires a particular sequence of written and oral contacts directly with the debtor). But such a case is not before us, and the mere possibility that a claim based on one of the seventeen prohibited practices set forth in the Florida Act *might* be preempted by the HEA is not

---

[9]    "Pre-emption may result not only from action taken by Congress itself; a federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation." *Louisiana Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 369, 106 S. Ct. 1890, 1898-99 (1986).

[10]    For example, the telephone calls and letters might violate Fla. Stat. § 559.72(7), which prohibits a debt collector from willfully communicating with the debtor with such frequency as can reasonably be expected to harass the debtor.

25

enough for us to conclude that Cliff's claim brought under § 559.72(9) *is* preempted, especially when it is clear that third-party debt collectors can comply with both the HEA and Fla. Stat. § 559.72(9).

Because compliance with federal and state law is possible, OSI seeks refuge in the last possible ground for preemption, vigorously contending that the Florida Act stands as an obstacle to the accomplishment of Congress's objectives in enacting the HEA. The purposes underlying the HEA's loan programs are fourfold: to enable the Secretary of Education to encourage lenders to make student loans, to provide student loans to those students who might not otherwise have access to funds, to pay a portion of the interest on student loans, and to guarantee lenders against losses. 20 U.S.C. § 1071(a)(1); *McCulloch v. PNC Bank, Inc.*, 298 F.3d 1217, 1224 (11th Cir. 2002). OSI makes three arguments to support its contention that the Florida Act hinders the accomplishment of these goals: (1) permitting a debtor to maintain a state law cause of action undermines the HEA's enforcement scheme and permits an end-run around those decisions that hold that the HEA does not authorize a private right of action; (2) a Notice of Interpretation issued by the Secretary of Education compels the conclusion that any state law that would hinder any pre-litigation collection activity taken by a third-party debt collector is preempted; and (3) the Florida Act (in particular, its four-year statute of limitations) imposes greater liability than the HEA

and the FDCPA, disrupting the balance Congress struck between the interests of debtors and the interests of those students who rely on a stable federal student loan program. We address each argument in turn.

OSI concedes, as it should, that a violation of the HEA can give rise to a cause of action under the FDCPA. *See* OSI Br. at 28 ("Student loan debt collectors are clearly subject to private liability for abusive practices under the FDCPA, including practices that may constitute violations of the HEA."). The Secretary of Education agrees that the FDCPA and the HEA are intended to work in tandem. 34 C.F.R. § 682. With this in mind, we reject OSI's argument that permitting a private cause of action under state law equates to an end-run around our prior decision that the HEA does not authorize a private right of action, because a cause of action under the FDCPA – which the Secretary of Education, both parties, and this court agree is permissible – would constitute just as much of an end-run around our decision as a cause of action under state law.

We likewise reject OSI's contention that permitting a private cause of action would undermine Congress's enforcement scheme. The enforcement scheme relies on the authority vested in the Secretary of Education, and the Secretary has expressed the belief that a private cause of action is not only consistent with Congress's enforcement scheme, but a necessary part of it. There is no indication that the

Secretary contemplated that the FDCPA would work in tandem with the HEA to the exclusion of state law remedies, and OSI does not direct us to any authority to support the proposition that the Secretary believed that the HEA and state consumer protection statutes should not similarly work in tandem.[11]

OSI urges us to find preemption based on a Notice of Interpretation issued by the Secretary of Education that prompted the Ninth Circuit, in *Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260 (9th Cir. 1996), to conclude that a cause of action under the Oregon Unfair Debt Collection Practices Act was preempted. In 34 C.F.R. §§ 682.410 and 682.411, the Secretary established a mandatory sequence of contacts and other collection actions for diligent collection of delinquent student loans. When borrowers began to invoke state law to prevent lenders and guaranty agencies from completing the sequence of actions required under the regulations, the Secretary issued a Notice of Interpretation addressing the preemptive effect of these regulations. The notice states, in pertinent part:

---

[11] Without an express statement from the Secretary that the FDCPA is intended to be the *only* vehicle for protecting debtors from abusive and deceptive collection practices, we decline to hold that the Secretary implicitly intended to foreclose state law remedies. The FDCPA affirmatively acknowledges that state law remedies may be pursued concurrent with FDCPA remedies. 15 U.S.C. § 1692n ("[The FDCPA] does not annul, alter, or affect, or exempt any person . . . from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency.").

[T]he preemptive effect of these regulations extended no farther than is reasonably necessary to achieve an effective minimum standard of collection action. . . . The Secretary promulgated [these regulations] to establish minimum required collection actions . . ., and intended these provisions . . . to preempt contrary or inconsistent State law to the extent necessary to permit compliance with the Federal regulations. . . . These provisions therefore preempt State law that would prohibit, restrict, or impose burdens on the completion of that sequence of contacts . . . . Moreover, because holders of [these student loans] commonly engage servicers and collection agencies to perform these dunning activities, this preemption includes any State law that would hinder or prohibit any activity taken by these third parties to complete these required steps. . . . This interpretation applies only to preemption by §§ 682.410(b)(4) and 682.411. The Secretary does not attempt here to describe which other provisions of [the regulations], or the HEA itself, preempt State law.

Notice of Interpretation, 55 Fed. Reg. at 40,121-22. Based on this notice, the *Brannan* majority concluded that Oregon's consumer protection statute was preempted because it "consists of nothing but prohibitions, restrictions and burdens on collection activity." 94 F.3d at 1266. OSI relies upon the Notice of Interpretation and the reasoning of the *Brannan* majority to contend that Florida's consumer protection statute is similarly preempted.

We are not persuaded. On its own terms, the Secretary's interpretation limits the preemptive reach of the regulations to only those state laws that would prohibit, restrict, or impose burdens on the completion of the mandatory contacts prescribed by the regulations. *Id.* at 1263 (noting that the official interpretation indicates that only inconsistent state law governing pre-litigation collection activities by third-party

29

debt collectors has been preempted); *McComas*, 1997 WL 118417 at *2 (read in its entirety, the Notice of Interpretation indicates that the Secretary's regulations preempt only those state laws contrary to or inconsistent with the collection procedures mandated by the regulations and those laws that would frustrate the purpose of the HEA). But OSI does not contend that the state law provision at issue, Fla. Stat. § 559.72(9), would prohibit, restrict, or impose burdens on the completion of these contacts. Under this provision, OSI cannot "[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9). For us to conclude that this provision of the Florida Act hinders the completion of the sequence of collection activities, we would have to first conclude that the regulations require a third-party debt collector to attempt to collect a debt that it knows is not legitimate or to assert the existence of a legal right that it knows does not exist. We are certain that the HEA and its regulations do not contemplate third-party debt collectors attempting to collect debts that are not legitimate or asserting rights that do not exist. Therefore, the Secretary of

30

Education's Notice of Interpretation does not suggest that a cause of action under Fla. Stat. § 559.72(9) is preempted.[12]

Although Fla. Stat. § 559.72(9) does not impose burdens on the completion of the sequence of collection activities, OSI contends that other provisions of § 559.72 impose burdens on collection activity and, as a result, the entire Florida Act should be preempted. OSI finds some support for this argument in *Brannan*. The *Brannan* court did not engage in a provision-by-provision preemption analysis; instead, it viewed the Oregon statute broadly, concluded that the statute "consists entirely of restrictions and prohibitions on collection activity," and held that the entire statute is preempted. 94 F.3d at 1266. We acknowledge that other subsections of Fla. Stat. § 559.72 may hinder or restrict the completion of the required collection activities. *See supra* note 10. But an entire state statute is not preempted because some of its provisions may actually conflict with federal law. *See Brannan*, 94 F.3d at 1268

---

[12] Our conclusion differs from that of the *Brannan* majority for several reasons. First, as we note later in our discussion, the *Brannan* majority failed to analyze conflict preemption on a provision-by-provision basis, opting instead to adopt a broad view of conflict preemption. More importantly, we reach a different result because the cases are distinguishable. In *Brannan*, the plaintiff alleged that a guaranty agency threatened to cause her to lose her job, communicated with third parties about her debt, and refused to communicate with her about her debt through her attorney, all in violation of the Oregon Unfair Debt Collection Practices Act. 94 F.3d at 1262. Although it is not entirely clear from the *Brannan* opinion, the HEA regulations might have required the guaranty agency to engage in some or all of these actions (e.g., communicating directly with the debtor instead of her attorney). By contrast, Cliff's allegations, as noted above, are based upon a provision of Florida law that does not hinder the completion of the sequence of contacts.

(Fletcher, J., concurring and dissenting) ("Absent a conclusion that Congress intended to occupy the entire field of pre-litigation debt collection activities, a position the majority appears properly to disclaim, we must look to the particular state law provision by provision in order to determine whether any provision is inconsistent with the HEA."). In fact, many provisions of state consumer protection statutes do not conflict with the HEA or its regulations, and many state law provisions, including Fla. Stat. § 559.72(9), actually complement and reinforce the HEA. *See, e.g.*, *Brannan*, 94 F.3d at 1269 (Fletcher, J., concurring and dissenting); *McComas*, 1997 WL 118417 at *3 (concluding that the West Virginia Consumer Collection Practices Act as a whole does not conflict with the HEA or its regulations, and finding that several provisions of the West Virginia Act actually complement the HEA).

We also reject OSI's argument that the four-year statute of limitations under the Florida Act places the statute in conflict with the goals of the HEA.[13] Encouraging lenders to participate in federal student loans programs is an objective of the HEA, and there is no question that increasing the prospect of civil liability might discourage some lenders from participating. But lenders are already subject to civil liability under the FDCPA and its one-year statute of limitations, 15 U.S.C. §

---

[13] In 2001, after the complaint was filed in this case, the Florida Consumer Collection Practices Act was amended to establish a two-year statute of limitations for actions filed under the Florida Act. Fla. Stat. § 559.77(4).

32

1692k(d), and there is nothing to suggest that by merely permitting claims to be brought within four years instead of one, the Florida Act discourages lender participation to such an extent that it stands as an obstacle to the HEA. Under the FDCPA, a prevailing class action plaintiff is entitled to any actual damages and such additional damages (up to $1,000) that the court may allow, and the rest of the class members collectively may receive an amount that the court may allow up to the lesser of $500,000 or one percent of the debt collector's net worth. *Id.* § 1692k(a)(2)(B). By contrast, under the Florida Act, plaintiffs are entitled to the greater of actual damages or $500. Fla. Stat. § 559.77. While in some circumstances the potential award under the Florida Act might exceed the damages available under the FDCPA, all lenders, by virtue of their participation in the federal student loan program and in light of the possibility of a FDCPA claim, are already potentially liable for up to $500,000 or one percent of their net worth. On this basis, we conclude that the Florida Act's four-year statute of limitations does not present such a threat to the continued participation of lenders in federal student loan programs that the Florida Act can be deemed to obstruct the accomplishment of the objectives of the HEA.

In summary, we hold that the HEA does not preempt Cliff's claim under the Florida Consumer Collection Practices Act. The preemptive clause in § 1095a expressly preempts only those state laws that would hinder or otherwise obstruct a

guaranty agency from employing the wage garnishment remedy made available by the HEA. Because the wage garnishment section and several other sections of the HEA include clauses that expressly preempt certain provisions of state law, we conclude that the HEA does not occupy the field of student loan debt collection, thus there is no field preemption. We also conclude that Fla. Stat. § 559.72(9) does not actually conflict with the HEA because third-party debt collectors can comply with both the HEA and Fla. Stat. § 559.72(9) and because a cause of action under § 559.72(9) does not stand as an obstacle to the accomplishment of Congress's objectives for the HEA. Accordingly, we hold that the district court erred when it concluded that Cliff's claim under Fla. Stat. § 559.72(9) was preempted by the HEA.

B.     Relation Back

Next, we must decide if Cliff's Amended Complaint relates back, because if it does, Cliff's class could include consumers outside Florida. Citing Fed. R. Civ. P. 15(c), Cliff argues that the claims asserted on behalf of the nationwide class involve precisely the same conduct that he alleged in the original complaint. Because the original complaint placed OSI on notice of the nature of the class action claims, he argues, the complaint's failure to provide OSI with complete notice of the size of the putative class is merely a procedural matter that does not affect the application of

Rule 15(c). Moreover, Cliff argues that the district court did not have any evidentiary support for its conclusion that relation back would unfairly prejudice OSI.

OSI directs our attention to Fed. R. Civ. P. 15(c)(3) and notes that while Rule 15(c)(3) by its terms applies only to amendments involving defendants, other circuits have applied Rule 15(c)(3) to amendments involving plaintiffs. OSI also points us to courts that have created tests based on considerations of notice and prejudice to determine whether an amendment regarding plaintiffs relates back. Under either Rule 15(c)(3) or the judicially-created test, OSI contends, Cliff's amendment does not relate back because Cliff failed to provide notice of these potential class members and because relation back would unfairly prejudice OSI.

Our analysis of relation back begins with Fed. R. Civ. P. 15(c), which governs the relation back of amendments. As a general proposition under that rule, an amendment of a pleading relates back to the original pleading if "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2).[14] But when an amendment seeks to change a party against whom a claim

[14] It goes without saying that the claims Cliff asserts in the Amended Complaint arose out of the same conduct as the claims alleged in the original complaint.

is asserted, as opposed to changing merely the allegations set forth in the pleading, the relation back rule is more stringent: Such an amendment relates back

> if the foregoing provision (2) [quoted above] is satisfied and . . . the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed. R. Civ. P. 15(c)(3). As a result, when an amendment seeks to change a party against whom a claim is asserted (which is, in most circumstances, the defendant), Rule 15(c)(3) requires more than a showing that the claim arose out of the same conduct or transaction originally pleaded; when an amendment seeks to change or add a defendant, Rule 15(c)(3) introduces considerations of both prejudice and notice.

It is clear that Rule 15(c)(3) does not expressly contemplate an amendment that adds or changes plaintiffs. When faced with such a situation, however, some courts have extended Rule 15(c)(3) to address this type of amendment. *See, e.g.*, *SMS Financial, Ltd. Liability Co. v. ABCO Homes, Inc.*, 167 F.3d 235, 244-45 (5th Cir. 1999); *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 19 (2d Cir. 1997); *Nelson v. County of Allegheny*, 60 F.3d 1010, 1014-15 (3d Cir. 1995). Before these courts allow an amendment to relate back, they ask whether the defendant would be unfairly prejudiced in maintaining a defense against the newly-added

36

plaintiff and whether the defendant knew or should have known that it would be called upon to defend against claims asserted by the newly-added plaintiff. *See SMS Financial*, 167 F.3d at 245; *Nelson*, 60 F.3d at 1014-15. This extension of Rule 15(c)(3) to amendments involving plaintiffs rests on solid ground. When Rule 15(c) was amended in 1966, the advisory committee wrote:

> The relation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem is generally easier. Again the chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs.

Fed. R. Civ. P. 15 advisory committee's note to the 1966 Amendment.

Other courts have developed their own tests for determining whether an amendment adding plaintiffs should relate back. While these courts do not explicitly apply Rule 15(c)(3), their judicially-created tests still turn upon considerations of notice and prejudice. For instance, the Ninth Circuit has developed a three-part test for determining whether an amendment adding a plaintiff relates back. *See In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 935 (9th Cir. 1996). Under the Ninth Circuit's test, the amendment relates back if (1) the original complaint gave the defendant adequate notice of the claims of the newly-proposed plaintiff, (2) the relation back does not unfairly prejudice the defendant, and (3) there is an identity of interests between the original plaintiff and the newly-proposed plaintiff. *See id.* In this case,

the district court concluded that Rule 15(c)(3) did not apply, and instead employed the Ninth Circuit's test and held that Cliff's original complaint did not provide adequate notice to OSI and that relation back would unfairly prejudice OSI.

We need not decide today which test applies.[15] OSI argues that Cliff's amendment fails to satisfy the notice and prejudice requirements for relation back under either test, and we agree. Nothing prevented Cliff from seeking to represent consumers outside Florida from the moment he initiated this lawsuit. When the statute of limitations ran on any alleged FDCPA claims on June 1, 1999, OSI had been placed on notice of only its obligation to defend itself against claims of *Florida* consumers. Therefore, the district court did not clearly err when it concluded that Cliff's original complaint did not provide OSI with adequate notice of the nationwide class, nor did it clearly err when it concluded that relation back would unfairly prejudice OSI. In rejecting Cliff's relation back argument, we echo the sentiments of the Second Circuit, which relied upon the Supreme Court's decision in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S. Ct. 756 (1974), when it declared:

---

[15] Neither party has briefed the comparative value of these approaches, and neither party has urged us to choose among them. Accordingly, we leave the selection of the proper method of analysis – whether it be the Rule 15(c)(3) approach or the formulation of a judicially-created test – for another day, when the distinction between the two might actually affect the outcome of the case.

Relation back, at least on the facts of this case, would not accord with one of the rationales of *American Pipe*, that commencement of the class action adequately notifies the defendants "not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. Within the period set by the statute of limitations, the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation . . . ."

*Arneil v. Ramsey*, 550 F.2d 774, 782-83 (2d Cir. 1977) (quoting *American Pipe*, 414 U.S. at 554-55, 94 S. Ct. at 767).[16]

C.      "Timely" Requests

Cliff also asks us to determine whether the district court erred when it construed "timely" to include only those debtors who requested a hearing within the 15-day period.  Based on our careful review of the record, we conclude that the district court did not err when it construed "timely," based on the Complaint and Cliff's motion for class certification, to include only those debtors who requested a hearing within the 15-day period. We likewise conclude that the district court did not

---

[16]      We do not lose sight of the fact that class definitions may undergo modification, possibly several times, during the course of a class action.  Our opinion should not be understood to declare a rigid rule that any amendments that modify and thus enlarge a class will not relate back under any circumstances.  Such a determination requires a case-by-case analysis.  But we are not presented with a case in which a class action plaintiff has made a minor modification in the class definition that slightly enlarged the class beyond the scope of the class proposed in the original complaint.  On the contrary, in this case, Cliff made the strategic decision to limit the class to individuals residing in one state, and subsequently decided – after the statute of limitations had run – that he wished to expand his suit to encompass individuals in all fifty states.

39

abuse its discretion when it denied Cliff's motion for reconsideration, in which Cliff asked the court to omit "timely" from the class definition.

Although we find no error in the district court's treatment of this issue, Cliff should be permitted to amend his class definition to include Florida Act claims based on the Florida Act's four-year statute of limitations in light of our preemption ruling. This, in turn, will probably prompt reopening discovery. With this in mind, if Cliff wishes to represent debtors without regard to the timing of their hearing requests, he should seek leave to amend his class definition in this regard.

D. Requests for Additional Discovery and an Evidentiary Hearing

We find no abuse of discretion in the district court's discovery rulings to date or in its failure to hold an evidentiary hearing. But our preemption ruling does suggest the need for additional discovery (as to the Florida Act claims). There may or may not be a need to conduct an evidentiary hearing at some later time. We leave these decisions to the judgment of the district court on remand.

## VI. CONCLUSION

Based on the foregoing discussion, we find no error in the district court's ruling that Cliff's Amended Complaint does not relate back to the original complaint. We also find no error in the court's interpretation of "timely," in its discovery rulings, or in its denial of Cliff's requests for an evidentiary hearing. However, we VACATE

the district court's February 6, 2002, order denying class certification because the court's denial was premised on the erroneous conclusion that the Higher Education Act preempted Cliff's Florida Consumer Collection Practices Act claim, and we REMAND this action for further proceedings consistent with this opinion.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.