[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————

No. 09-16079

———————

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 5, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00089-CV-5

MADGLEAN PACE,
MARVIN PACE,
CHARLES PACE,
MELVIN PACE,
SHELLEY PACE, JR.,

                                        Plaintiffs-Appellants,

versus

CSX TRANSPORTATION, INC.,

                                        Defendant-Appellee.

———————

Appeal from the United States District Court
for the Southern District of Georgia

———————

(August 5, 2010)

Before DUBINA, Chief Judge, PRYOR and MARTIN, Circuit Judges.

DUBINA, Chief Judge:

Appellants, Madglean Pace, Marvin Pace, Charles Pace, Melvin Pace, and Shelley Pace, Jr., ("the Pace family"), appeal from the district court's grant of summary judgment in favor of CSX Transportation ("CSX") on their state law nuisance claim stemming from CSX's construction and use of a side track adjacent to property owned by the Pace family in Ambrose, Georgia. The Pace family argues that the district court erred in finding that their claim is preempted by section 10501(b)(2) of the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 10101–11908 (2006).

After reviewing the record, reading the parties' briefs, and having the benefit of oral argument, we affirm the district court's grant of summary judgment in favor of CSX.

## I. BACKGROUND

The Pace family owns land in Ambrose, Georgia, that is adjacent to a railroad right of way held by CSX. The mainline track has been in continuous operation for over 100 years and is currently used by trains to carry a variety of goods including automobiles, grain, construction materials, and intermodal freight.

Until 2006, the track abutting the Pace family's property was a single track used by trains traveling in both directions. In September 2006, CSX constructed a roughly two-mile-long side track parallel to the mainline track. The side track

2

allows faster trains to pass the slower trains and trains traveling in different directions to pass one another. The purpose of this particular side track is to solve the traffic problems caused by a sixteen-mile stretch of mainline track that was previously without a side track.

In January 2008, the Pace family filed suit in Superior Court in Coffee County, Georgia, alleging that the operation of the side track caused an increase in noise and smoke due to the traffic on the track and made their land virtually unusable. CSX removed the case to federal court in November 2008. In July 2009, CSX moved for summary judgment on the basis of federal preemption and the district court granted the motion. This appeal followed.

## II.  STANDARD OF REVIEW

This court reviews *de novo* a district court's grant of summary judgment, *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007), and reviews *de novo* a district court's conclusion that federal law preempts a state law claim, *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1121 (11th Cir. 2004).

## III.  DISCUSSION

The Supreme Court has identified three types of preemption: (1) express preemption; (2) field preemption; and (3) conflict preemption. *This That & The Other Gift & Tobacco, Inc. v. Cobb County, Ga.*, 285 F.3d 1319, 1322 (11th Cir.

3

2002). The type of preemption relied upon by the district court in granting summary judgment, express preemption, occurs when Congress has explicitly indicated its intention to preempt state law in the text of the statute. *English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79, 110 S. Ct. 2270, 2275 (1990). If Congress does not explicitly preempt state law, however, preemption still occurs when federal regulation in a legislative field is so pervasive that we can reasonably infer that Congress left no room for the states to supplement it, known as field preemption. *Id.* at 79, 110 S. Ct. at 2275. Even when Congress has neither expressly preempted state law nor occupied the field, state law is preempted when it actually conflicts with federal law. *Id.* Conflict preemption arises either when it is impossible to comply with both federal and state law or when state law "stands as an obstacle" to achieving the objectives of the federal law. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372–73, 120 S. Ct. 2288, 2294 (2000) (internal quotation marks omitted).

The statute at issue in this case, the Interstate Commerce Commission Termination Act (ICCTA), provides in section 10501(b) that jurisdiction of the Surface Transportation Board (STB) is exclusive over "the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to

4

be located, entirely in one State[.]" 49 U.S.C. § 10501(b)(2). It also states that "[e]xcept as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." *Id*. § 10501(b).

The parties agree that construction and operation of a side track is covered by the ICCTA; however, the Pace family argues that its nuisance action for monetary damages is not preempted by the ICCTA, because it is not directly related to the operation and use of the side track. The Pace family urges the court to take a remedy-centered approach and find an action is only preempted where a remedy is sought that would demand changes in the railroad's core operations. The district court disagreed with the Pace family's framing of the issue and concluded that because the Pace family sought a remedy of any sort for the construction and use of a side track, the claim is expressly preempted by the ICCTA.

We agree with the district court's conclusion. When this court considers preemption issues, "we start with the assumption that the historic police powers of the states are not superseded by federal law unless preemption is the clear and manifest purpose of Congress." *Cliff*, 363 F.3d at 1122. Here, the language of section 10501(b) plainly conveys Congress's intent to preempt all state law claims

pertaining to the operation or construction of a side track.  Accordingly, we hold that the Pace family's state law nuisance claim for monetary relief is expressly preempted by the ICCTA.

Our holding is also supported by persuasive authority.  The Surface Transportation Board has taken the position that state law nuisance claims are preempted by the ICCTA.  *See, e.g., Mark Lange*, S.T.B. Finance 35037, 2008 WL 219583, at *3 (S.T.B. Jan. 28, 2008) (finding state law nuisance claim seeking damages of $20,000 is preempted by ICCTA).  Further, although no circuit court has discussed the preemptive scope of the ICCTA in the context of a state law nuisance claim,[1] a Fifth Circuit case strongly supports our holding that the Pace family's nuisance claim is preempted.  In *Friberg v. Kansas City Southern Railway, Co.*, 267 F.3d 439, 444 (5th Cir. 2001), the Fifth Circuit reversed a jury verdict entered against a railway company on a business owner's state law negligence claims stemming from the railway's expansion and use of a side track.

---

[1]There is a First Circuit case denying removal jurisdiction over a state law nuisance claim because the claim was not completely preempted by the ICCTA.  *See Fayard v. N.E. Vehicle Servs., LLC*, 533 F.3d 42, 47 (1st Cir. 2008).  Complete preemption, as a narrow exception to the well-pleaded complaint rule, carries a higher burden than proving a defense based on preemption. *See e.g., Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1344 (11th Cir. 2009).  The First Circuit concluded that "preemption may well be a defense to . . . nuisance claims, but the conditions have not been met to authorize removal through the extreme and unusual outcome of complete preemption." *Fayard*, 533 F.3d at 49.  The First Circuit noted in dicta that nuisance claims seeking monetary damages are likely preempted by the ICCTA in the same way as claims seeking a modification of the railroad's operations. *Id.*

Specifically, the business owner complained that the railway's decision to extend the side track resulted in longer and more frequent trains, which often obstructed customers' access to the business. *Id*. at 440–41. The business eventually closed. *Id*. The Fifth Circuit held that the business owner's state law tort claims were preempted by the ICCTA, concluding that "[n]othing in . . . the all-encompassing language of the ICCTA's preemption clause permit[s] the federal statute to be circumvented by allowing liability to accrue under state common law, where that liability arises from a railroad's economic decisions such as those pertaining to train length, speed or scheduling." *Id*. at 444.

The same can certainly be said in this case: to permit monetary liability to accrue under a state law nuisance claim where that liability is based on decisions the ICCTA purposefully freed from outside regulation would contradict the language and purpose of the ICCTA. The ICCTA expressly preempts state remedies involving the operation of the side track. Therefore, we will not permit landowners to circumvent that Congressional decision through state law nuisance claims.

## IV. CONCLUSION

For the above-stated reasons, we affirm the district court's grant of summary judgment in favor of CSX on preemption grounds.

**AFFIRMED.**

7