[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12113
_____

D.C. Docket No. 3:16-cv-00082-DHB-BKE


HOPE D. DARRISAW,

Plaintiff-Appellant,

versus

PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY (PHEAA),

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(February 7, 2020)

Before WILLIAM PRYOR, MARTIN, and KATSAS,[*] Circuit Judges.

WILLIAM PRYOR, Circuit Judge:

_____

[*] Honorable Gregory G. Katsas, United States Circuit Judge for the District of Columbia Circuit, sitting by designation.

This appeal presents the question whether a guaranty agency for federal student loans qualifies as a "debt collector" under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(6), when it mistakenly attempts to collect a nonexistent student-loan debt. Hope Darrisaw, a student-loan borrower, sued the Pennsylvania Higher Education Assistance Agency under the Act after it tried to collect a debt she never incurred. The district court dismissed her complaint on the ground that the Agency, which guarantees federal student loans for the Secretary of Education, is not a "debt collector" under the Act; it concluded that the Agency fell within an exception for persons who collect debts "incidental to a bona fide fiduciary obligation." *Id.* § 1692a(6)(F)(i). We agree that the Agency falls within this exception, so we affirm.

## I. BACKGROUND

Because this appeal is from the dismissal of a complaint, we accept the allegations of the complaint as true. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010). We recount the facts as alleged in the complaint. And we construe them in the light most favorable to the plaintiff. *See id.*

Hope Darrisaw obtained student loans to attend college. In July 2014, her loan servicer, Nelnet, placed the loans in deferment because Darrisaw was "enrolled in school at least half-time." Nelnet scheduled the deferment to last from July 2014 until December 2016, during which time no payments would be due.

2

In April 2016, Darrisaw received a letter from the Pennsylvania Higher Education Assistance Agency stating that the Agency had "paid a default claim on your student loan(s) identified below" and was "now the legal owner of your loan(s)." The letter identified four loans and informed Darrisaw that because of her default she was "required to pay [her] loan(s) in full immediately" to the Agency. Darrisaw had not obtained those four loans and believed the letter was sent "in error," so she did not initially respond to the letter.

The following month, May 2016, the Agency sent Darrisaw a second letter. That letter warned Darrisaw that her defaulted loan was "now a federal debt" and would be "subject to collection efforts" if she failed to remit payment in the amount of $18,812.83. Concerned, Darrisaw called the Agency at "the number listed on the Federal Student Aid website" because she "did not trust the information in the letters." She planned to "inquire about the debt" and "correct the error." But the representative Darrisaw called denied that she had an outstanding debt with the Agency and terminated the call because the Agency's "records did not contain any reference to" Darrisaw.

Darrisaw received a third letter from the Agency in June 2016. This letter stated that the Agency would begin garnishing Darrisaw's wages to collect her defaulted student loans unless she established a repayment plan by the following month. Because the Agency had denied the existence of the debt over the

3

telephone, Darrisaw believed the collection letters were part of "a fake debt collection scam," so she continued to ignore them.

In July 2016, the Agency sent a garnishment order to Darrisaw's employer directing it to deduct and remit to the Agency 15 percent of her disposable pay. The Agency sent a second letter in September 2016 notifying Darrisaw's employer that it had not received any garnishment payments and explaining that the Agency could take legal action if the employer failed to comply with the garnishment order. Darrisaw's employer began garnishing her wages shortly after receiving the second letter.

Darrisaw filed a *pro se* complaint against the Agency for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* She also brought claims under the Federal Trade Commission Act, 15 U.S.C. § 45, and against James Preston, the President and CEO of the Agency. The district court dismissed those claims after screening Darrisaw's complaint, 28 U.S.C. § 1915(e)(2)(B), and Darrisaw does not appeal those dismissals.

Darrisaw alleges that the debts the Agency sought to collect were "assigned to [her] in error, either on the part of the lender, the [Department of Education], or the [Agency]." She alleges that she "does not owe the debt" the Agency sought to collect and that the Agency "abdicated its responsibilities . . . to maintain procedures reasonably adapted to avoid such an error." She also asserts that the

4

Agency made "false or misleading representations," was "negligen[t]," and "fail[ed] to validate the debt." And she accuses the Agency of engaging in "fraudulent" business practices.

The Agency moved to dismiss Darrisaw's claim under the Fair Debt Collection Practices Act. *See* Fed. R. Civ. P. 12(b)(6). The Agency argued it was not a "debt collector" under the Act. As a federal guaranty agency, the Agency argued it fell within an exception to the Act's definition of "debt collector" for persons "collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . is incidental to a bona fide fiduciary obligation." 15 U.S.C. § 1692a(6)(F)(i). The district court granted the Agency's motion to dismiss.

## II. STANDARD OF REVIEW

We review *de novo* the dismissal of a complaint. *Culverhouse v. Paulson & Co.*, 813 F.3d 991, 993 (11th Cir. 2016). We construe the allegations of a *pro se* complaint liberally, in the light most favorable to the plaintiff. *Dixon v. Hodges*, 887 F.3d 1235, 1237 (11th Cir. 2018).

## III. DISCUSSION

Congress enacted the Higher Education Act of 1965 "[t]o strengthen the educational resources of our colleges and universities and to provide financial assistance for students in postsecondary and higher education."  Higher Education

5

Act of 1965, Pub. L. No. 89-329, 79 Stat. 1219, 1219; *see also Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1122 (11th Cir. 2004). Title IV of the Act empowers "the Secretary of Education to administer several federal student loan and grant programs, including the Federal Family Education Loan Program." *Cliff*, 363 F.3d at 1122; *see also* 20 U.S.C. § 1071 *et seq.* Under the programs, "lenders make guaranteed loans under favorable terms to students and their parents, and these loans are guaranteed by guaranty agencies and ultimately by the federal government." *Cliff*, 363 F.3d at 1122; *see also* 34 C.F.R. § 682.100.

Guaranty agencies are either states or nonprofit organizations that agree with the Secretary to administer a loan-guarantee program under the Higher Education Act. 20 U.S.C. § 1078(b)(1); 34 C.F.R. § 682.200(b). Under the agreements, these agencies guarantee private lenders against loss when a borrower defaults on a federal student loan. 34 C.F.R. § 682.100(b)(1). If a borrower defaults, the guaranty agency pays the default claim to the lender and is reimbursed by the Secretary. *Id.*; 20 U.S.C. § 1078(c)(1)(A). The guaranty agency must then attempt to collect the unpaid loan from the borrower on behalf of the Secretary. 34 C.F.R. § 682.410(b)(6)(i); *see* 20 U.S.C. § 1078(c)(2)(A), (c)(6). The guaranty agency returns most of any payments it collects to the Secretary but may keep a percentage of the payments for use in its operating fund. 20 U.S.C. §§ 1078(c)(2)(D), (c)(6), 1072b(c)(5).

6

Because guaranty agencies must recover and safeguard money that belongs to the federal government, federal law regulates their relationships with the Secretary. The Higher Education Act requires the agreements between guaranty agencies and the Secretary to establish procedures "to protect the United States from the risk of unreasonable loss" and "to assure that due diligence will be exercised in the collection of loans insured under the program." *Id.* § 1078(c)(2)(A). The implementing regulations describe the relationship between a guaranty agency and the Secretary as that of a fiduciary. 34 C.F.R. § 682.419(a) ("The guaranty agency must exercise the level of care required of a fiduciary charged with the duty of protecting, investing, and administering the money of others.").

We must decide whether the Agency acted as a "debt collector" when it attempted to collect student-loan debts from Darrisaw that she never incurred. 15 U.S.C. § 1692a(6). The Act excludes from its definition of "debt collector" "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . is incidental to a bona fide fiduciary obligation." *Id.* § 1692a(6)(F)(i). The Agency argues that it falls within this exclusion because it sought to collect the debts from Darrisaw pursuant to its fiduciary obligation to the Secretary. Although Darrisaw agrees that guaranty agencies act "incidental to a bona fide fiduciary obligation" when they attempt to

7

collect valid debts for the Secretary, she argues they do not fall within the exclusion when they attempt to collect nonexistent debts. We agree with the Agency.

We have held that a guaranty agency acts "incidental to a bona fide fiduciary obligation" when it attempts to collect a debt from a borrower who defaulted on a federal student loan. *Pelfrey v. Educ. Credit Mgmt. Corp.*, 208 F.3d 945, 945 (11th Cir. 2000) (internal quotation marks omitted). In *Pelfrey*, we affirmed a judgment in favor of a guaranty agency "on the ground that the [Act] does not apply to the [guaranty agency]" because the agency fell within the exception for fiduciaries. *Id.* (internal citation omitted). It was undisputed in *Pelfrey* that the guaranty agency attempted to collect a student loan on which the borrower defaulted and that a guaranty agency had paid a default claim to the private lender that made the loan. *See Pelfrey v. Educ. Credit Mgmt. Corp.*, 71 F. Supp. 2d 1161, 1162 (N.D. Ala. 1999). But unlike the borrower in *Pelfrey*, Darrisaw alleges she never incurred the debts the Agency attempted to collect from her. She argues that allegation makes all the difference.

Darrisaw argues that a guaranty agency is not protecting federal assets when it attempts to collect a nonexistent debt, so it does not act "incidental to a bona fide fiduciary obligation" in that circumstance. She points to federal regulations acknowledging that guaranty agencies sometimes perform tasks "outside of their

8

[federal] guaranty activities" and requiring guaranty agencies "to ensure that Federal funds are not subsidizing non-[federal] guaranty activity." 61 Fed. Reg. 49,382, 49,382 (Sept. 19, 1996). She also maintains that the Higher Education Act requires guaranty agencies to exercise "due diligence . . . in the collection of loans *insured under the program*"—but not in the collection of false, nonexistent loans. 20 U.S.C. § 1078(c)(2)(A) (emphasis added). Because Darrisaw alleges she never took out the loans the Agency attempted to collect from her, she argues there are no federal funds at issue. And because the Agency was not acting to protect any federal funds, Darrisaw argues it did not act "incidental to a bona fide fiduciary obligation." 15 U.S.C. § 1692a(6)(F)(i).

The Agency responds that application of the fiduciary-obligation exception does not depend on whether the debt a guaranty agency attempts to collect is valid or nonexistent. It points to the text of the Act, which says the exception applies whenever a person attempts to collect any debt that is "owed or due *or asserted to be owed or due* another" if the activity "is incidental to a bona fide fiduciary obligation." *Id.* (emphasis added). To give effect to the phrase "or asserted to be owed or due," the Agency contends we must reject Darrisaw's interpretation.

We agree with the Agency that Darrisaw's interpretation of the phrase "incidental to a bona fide fiduciary obligation" would read out of the statute the language about debts "asserted to be owed or due another." *Id.* The text of the Act

9

makes clear that a person may attempt to collect a debt "incidental to a bona fide fiduciary obligation" whether the debt sought to be collected is "owed or due" another or only "asserted to be owed or due another." *Id.* To hold that a guaranty agency can never act incidental to a bona fide fiduciary obligation when it attempts to collect a debt that is only "asserted to be owed," *id.*, but not actually owed, would cause that phrase to "have no operation at all." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 174 (1803). A venerable canon makes clear that an interpreter must, if possible, give effect to every word and phrase in a statute. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 26, at 174 (2012). Although lawmakers sometimes use redundant terms in a statute, we cannot adopt an interpretation that would render a term *meaningless*, as Darrisaw asks us to do. *See United States v. Butler*, 297 U.S. 1, 65 (1936) ("These words cannot be meaningless, else they would not have been used.").

Our dissenting colleague maintains that Darrisaw's interpretation gives effect to the phrase "asserted to be owed or due" and offers an example of how, even under Darrisaw's interpretation, a guaranty agency can act as a fiduciary while collecting a debt that is only "asserted to be owed or due." *See* Dissenting Op. at 19–20. But the dissent's example cannot withstand scrutiny. The dissent says that a guaranty agency could qualify as a fiduciary if it tried to collect "a federal student loan that has recently been paid off by the debtor." *Id.* But that

10

example instead contradicts the dissent's interpretation because a guaranty agency that tries to collect a debt that no longer exists is still trying "to collect a nonexistent debt," which according to the dissent means the agency cannot be "acting 'incidental to a fiduciary obligation.'" *Id.* at 18. When a guaranty agency tries to collect an already-satisfied debt, it does not "act[] to recover and safeguard" *any* "federal assets." *Id.* at 20. We agree that a guaranty agency in that circumstance could qualify as a fiduciary, but only because the fiduciary-obligation exception can apply even when the debt a guaranty agency seeks to collect does not exist.

Congress easily could have written the Act to impose liability on persons who attempt to collect nonexistent debts pursuant to a fiduciary obligation. Congress could have narrowed the exception to the definition of "debt collector" to cover only persons attempting to collect debts "owed or due" another—that is, it could have omitted the phrase "asserted to be owed or due" from the exception. But Congress made a different choice. And to give effect to that choice, we must conclude that whether a debt is "owed" or only "asserted to be owed" is not dispositive of whether the exception applies. What matters is not whether the debt is real or nonexistent, but whether the guaranty agency acted "incidental to a bona fide fiduciary obligation" in attempting to collect it. 15 U.S.C. § 1692a(6)(F)(i).

Darrisaw contends that our interpretation of the fiduciary-obligation

11

exception would allow a guaranty agency that sometimes collects valid debts for the Secretary to commit fraud by collecting debts that it knows never existed, but we disagree. To fall within the exception, a person must act "incidental to a *bona fide* fiduciary obligation." *Id.* (emphasis added). Bona fide means "[i]n or with good faith; honestly, openly, and sincerely; without deceit or fraud." *Bona Fide*, *Black's Law Dictionary* (5th ed. 1979); *accord Bona Fide*, *Webster's New International Dictionary* (2d ed. 1959) ("In or with good faith; without fraud or deceit."). If a guaranty agency knowingly attempted to collect nonexistent debt as Darrisaw contemplates, it would not act incidental to a *good-faith* fiduciary obligation. It would instead act in bad faith, with fraud and deceit, and so could not claim the exception.

The dissent argues that we must "rewrite" the fiduciary-obligation exception to conclude that a guaranty agency does not act incidental to a good-faith fiduciary obligation when it acts in bad faith to collect a nonexistent debt. Dissenting Op. at 21. Not true. To be sure, as the dissent points out, the adjective "bona fide" modifies the term "fiduciary obligation." *Id.* (quoting 15 U.S.C. § 1692a(6)(F)(i)). That is, a *good-faith* fiduciary obligation is the kind of obligation a person must act "incidental to" in order to claim the exception. 15 U.S.C. § 1692a(6)(F)(i). But we do not see how a debt-collection activity taken in bad faith to collect a nonexistent debt could be "incidental to" a good-faith fiduciary obligation. *Id.* And the dissent

12

does not argue otherwise. Nor does it propose an alternative reading of the statute that gives effect to the term "bona fide." So our dissenting colleague is wrong to say that our interpretation relies on "a grammatically incoherent reading" of the statute. Dissenting Op. at 20.

Although a guaranty agency may not claim the fiduciary-obligation exception if it acts in bad faith, the text of the Act makes clear that it need not be perfect. After all, the exception applies even to those who collect debts that are only "asserted to be owed." 15 U.S.C. § 1692a(6)(F). Like other fiduciaries, a guaranty agency may act based on a good-faith fiduciary obligation even if it makes an honest mistake. *Cf. Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 370 (Del. 2006) (explaining that corporate directors failed to discharge their fiduciary obligations in good faith only if they "knew that they were not discharging their fiduciary obligations"). When a guaranty agency acts in good faith to collect a debt that is mistakenly "asserted to be owed" the Secretary, it acts incidental to a bona fide fiduciary obligation.

The problem for Darrisaw is that her complaint fails to allege that the Agency acted in bad faith. She alleges that the debts the Agency sought to collect were "assigned to [her] in error, either on the part of the lender, the [Department of Education], or the [Agency]." She accuses the Agency of "abdicat[ing] its responsibilities . . . to maintain procedures reasonably adapted to avoid such an

13

error." And she asserts that the Agency made "false or misleading representations," was "negligen[t]," and "fail[ed] to validate the debt." That is, Darrisaw's complaint alleges that the Agency negligently but mistakenly tried to collect a debt she did not owe, not that the Agency purposefully sought to collect a debt it knew she did not owe. When asked at oral argument whether the complaint alleged that the Agency acted in bad faith, even Darrisaw's counsel did not contend that the complaint alleged the Agency knew the debt it sought to collect was nonexistent. Oral Argument at 3:43–5:08 (Dec. 3, 2019). Although Darrisaw's complaint accuses the Agency of engaging in "fraudulent" business practices, that conclusory allegation of "fraud" is a legal conclusion we are not required to accept as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

Considering only the factual allegations of the complaint, and construing them liberally in the light most favorable to Darrisaw, she has not plausibly alleged that the Agency acted with "[d]ishonesty of belief, purpose, or motive" in attempting to collect the debts from her. *Bad Faith*, *Black's Law Dictionary* (11th ed. 2019). Because a defendant's status as a "debt collector" is an element of a plaintiff's claim under the Act, it was Darrisaw's burden to allege facts plausibly establishing that the Agency qualifies as a debt collector. *See Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216, 1218 (11th Cir. 2012). She failed to do so, and the district court correctly dismissed her complaint.

14

## IV. CONCLUSION

We **AFFIRM** the dismissal of Darrisaw's complaint.

MARTIN, Circuit Judge, dissenting:

The majority affirms dismissal of Ms. Darrisaw's pro se complaint, giving the reason that she did not plausibly allege that the Pennsylvania Higher Education Assistance Agency's ("PHEAA") collection efforts were undertaken in bad faith. I dissent because my reading of the statute that excepts those who are acting as fiduciaries does not support this result. As I understand it, a guaranty agency acts as a fiduciary to the Department of Education—and is thus exempt from limitations put on debt collectors—only when it collects on a federal student loan debt. Because Ms. Darrisaw's complaint plausibly alleges that PHEAA directed its debt-collection efforts toward her for a debt that did not exist, PHEAA cannot qualify under the fiduciary-obligation exception. And even if I agreed with the majority that PHEAA comes within the fiduciary-obligation exception (I don't), Ms. Darrisaw has stated a claim in any event because she plausibly alleges PHEAA acted in bad faith.

## I.

Under the Fair Debt Collection Practices Act ("FDCPA"), a person is not a "debt collector" if they are "collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity [] is incidental to a bona fide fiduciary obligation." 15 U.S.C. § 1692a(6)(F). In her complaint, Ms. Darrisaw alleges that PHEAA is a debt collector and attempted to collect a

16

debt from her that does not exist. We must accept this allegation as true when reviewing a motion to dismiss. Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1288 (11th Cir. 2010). Thus, the proper question before this Court is whether PHEAA can act "incidental to a bona fide fiduciary obligation" when it tries to collect a nonexistent debt. As I read the statute, it cannot.

The majority is correct in recognizing that a guaranty agency like PHEAA can act pursuant to a "bona fide fiduciary obligation" to the federal government when attempting to collect defaulted student loan debt. See Pelfrey v. Educ. Credit Mgmt. Corp., 71 F. Supp. 2d 1161, 1180 (N.D. Ala. 1999), aff'd, 208 F.3d 945 (11th Cir. 2000) (per curiam). That is because when a guaranty agency makes a "default payment" to a private lender to acquire defaulted student loan debt, it does so using federal funds. Id. Given that federal funds are used to acquire the defaulted loans, they remain assets of the Department of Education throughout the collection process. Id. (citing 20 U.S.C. § 1072(g)(1)). This means when a guaranty agency collects defaulted federal student loan debt, it acts pursuant to its fiduciary obligation to the federal government to recover and safeguard federal assets. See Pelfrey, 71 F. Supp. 2d at 1173 ("Student loan guarantors collect [federal] loans pursuant to a fiduciary obligation because they use [federal] funds to acquire these loans[.]" (citing testimony of Larry Oxendine, then-Director of Lender and Guarantor Oversight for the Department of Education)); 20 U.S.C.

17

§ 1078(c)(2)(A) (providing that guaranty agencies are required, in their collection activities, "to protect the United States from the risk of unreasonable loss").

As Ms. Darrisaw points out, however, this does not mean that an agency acting as a fiduciary for some loans is given fiduciary status for everything else it does. See Federal Family Education Loan (FFEL) Program, 61 Fed. Reg. 49,382, 49,382 (Sept. 19, 1996) (recognizing that guaranty agencies may act "outside of their [federal loan program] guaranty activities"); see also Peete-Bey v. Educ. Credit Mgmt. Corp., 131 F. Supp. 3d 422, 429 n.4 (D. Md. 2015) (observing that a company which "often acts as a guarantor" does not always act in that capacity). For example here, when a guarantee agency collects debt that is not part of a federal loan program, it is not acting as a fiduciary to the federal government because it is not attempting to recover or safeguard federal assets. See 20 U.S.C. § 1078(c)(2)(A) (requiring guaranty agencies to exercise due diligence in the collection of loans "insured under the [federal student loan] program.").

Thus, an agency taking collection actions is not acting "incidental to a fiduciary obligation" when it tries to collect a nonexistent debt. Certainly, a nonexistent debt is, by definition, outside the scope of a federal student loan program. And this is precisely what Ms. Darrisaw alleges in her complaint. She claims she never incurred the loans referenced in PHEAA's numerous collection letters, and that even PHEAA representatives admitted they had "no record of

18

[these debts]." Because Ms. Darrisaw plausibly alleges that PHEAA attempted to collect student loan debt that never existed, I would hold that PHEAA's collection efforts were not "incidental to a bona fide fiduciary obligation." This means those collection efforts are not protected under the fiduciary-obligation exception. As a result, I would reverse the District Court's dismissal of Ms. Darrisaw's complaint.

## II.

The majority offers fiduciary protection to PHEAA by relying on what I view as an erroneous interpretation of the fiduciary-obligation exception. I believe the majority makes two principal mistakes in its analysis.

a. The Majority Incorrectly Concludes That Ms. Darrisaw's Interpretation of the Exception Renders Meaningless the Term "Assert[ed]."

The majority says Ms. Darrisaw's interpretation of the FDCPA, which limits the exception to agencies collecting existing federal student loans, would render inoperable the phrase "asserted to be owed or due." Maj. Op. at 9–10. The majority correctly points out that the fiduciary-obligation exception applies not only to the collection of debts that are "owed or due," but also to debts that are merely "asserted to be owed or due." 15 U.S.C. § 1692a(6)(F) (emphasis added). But the majority is wrong when it says that accepting Ms. Darrisaw's interpretation would mean that a guaranty agency never acts incidental to a bona fide fiduciary obligation when collecting debt that is "not actually owed." Maj. Op. at 10. A guaranty agency might, for instance, seek collection of a federal student loan that

19

has recently been paid off by the debtor.  That loan would not be "owed," but only "asserted to be owed."  Nonetheless, the guaranty agency's collection activity is incidental to its fiduciary obligation because the agency sought to collect a loan that was acquired using federal funds, and thus acted to recover and safeguard federal assets.  20 U.S.C. § 1078(c)(2)(A).  Ms. Darrisaw's interpretation of the statute would not, therefore, render inoperable the term "assert[ed] to be owed or due."

    b.  <u>The Majority Incorrectly Concludes that a Guaranty Agency Must Act in Bad Faith to Fall Outside the Scope of the Exception.</u>

The majority opinion says the fiduciary-obligation exception applies even when a guaranty agency attempts to collect a debt that never existed, as long as it does so in "good faith."  Maj. Op. at 12.  The majority opinion starts from the premise that "bona fide" means "in or with good faith."  <u>Id.</u> (alteration adopted).  The opinion then says that a guaranty agency "acts incidental to a bona fide fiduciary obligation" whenever it "acts in good faith to collect a debt."  <u>Id.</u> at 13.  I reject this interpretation of the statute.

In my view, the majority's result can only be achieved by a grammatically incoherent reading of the exception.  Substituting the words "good faith" for the words "bona fide" in the statute, as the majority proposes, would make the exception apply to "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity [] is incidental

20

to a [good faith] fiduciary obligation." 15 U.S.C. § 1692a(6)(F). Applying basic grammar principles, the adjective "bona fide" (or, as the majority prefers, "good faith") should modify the term directly following it, which is "fiduciary obligation." But under the majority's interpretation, which (unlike the statute) requires only that a guaranty agency "act[] in good faith to collect a debt," Maj. Op. at 13, it is the agency's collection efforts, rather than its fiduciary obligation, which must be in good faith. For the majority's interpretation to make sense, therefore, the court must rewrite the fiduciary-obligation exception to cover "any person collecting or attempting to collect [in good faith] any debt . . . to the extent such activity is incidental to a bona fide fiduciary obligation." That is something we may not do. See Korman v. HBC Fla., Inc., 182 F.3d 1291, 1296 (11th Cir. 1999) ("It is not the business of courts to rewrite statutes.").

## III.

Based on this rewriting of the fiduciary-obligation exception, the majority says a plaintiff bringing an FDCPA claim against a guaranty agency must specifically plead that the agency acted in "bad faith." Again, the words "bad faith" do not appear in the statute, so imposing the obligation on Ms. Darrisaw to specifically plead bad faith would have required her to be able to see into the future to anticipate the interpretation of the statute given by the majority opinion here.

21

Even if I were to accept the majority's interpretation as correct, I would hold that Ms. Darrisaw's complaint adequately alleges PHEAA acted in "bad faith."

In an appeal from the dismissal of a complaint, we must "accept[] the factual allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC, 856 F.3d 1338, 1339 (11th Cir. 2017) (quotation marks omitted). Complaints by pro se litigants, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (per curiam) (quotation marks omitted). This more liberal pleading standard for pro se plaintiffs requires federal courts to "look beyond the labels" used in a complaint and instead to the substance of the plaintiff's allegations when determining if the plaintiff has stated a claim. See Means v. Alabama, 209 F.3d 1241, 1242 (11th Cir. 2000) (per curiam).

The gravamen of Ms. Darrisaw's complaint is that PHEAA tried collecting debt from her that did not exist, and that it continued its collection efforts even after acknowledging that Ms. Darrisaw owed it nothing. She alleges, for instance, that after PHEAA told her that "its records did not contain any reference to [the debt]," she considered future collection attempts to be "dubious" and part of "a fake debt collection scam." She said that notwithstanding her efforts to obtain information about this so-called debt from PHEAA, that it "concealed material

22

facts" from her.  Ms. Darrisaw also alleges that because PHEAA denied any knowledge or record of her student loan debt, that it "knowingly violate[d] the FDCPA" when it attempted to collect on the loan through a treasury offset. Finally, she claims that after PHEAA denied, for a second time, that she had "an[y] outstanding student loan debt with [PHEAA]," it "still characterize[d] the debt as owed."  On these facts, Ms. Darrisaw has by any measure alleged bad faith on the part of PHEAA.  Cf. Westmoreland Cty. Emp. Ret. Sys. v. Parkinson, 727 F.3d 719, 726 (7th Cir. 2013) (observing that in the fiduciary context, "conscious" wrongdoing constitutes "bad faith").

It's true, as the majority notes, that Ms. Darrisaw's complaint at times describes PHEAA's shortcomings as resulting from mere negligence.  Maj. Op. 13–14.  I recognize that Ms. Darrisaw's complaint is not the paragon of clarity. But as a pro se pleading, it need not be.  See Erickson, 551 U.S. at 94, 127 S. Ct. at 2200.  And while certain allegations in Ms. Darrisaw's complaint suggest PHEAA acted negligently, under our more lenient standard for reviewing pro se pleadings we must focus on the substance of Ms. Darrisaw's claims rather than the labels she uses when explaining PHEAA's activity.  See Means, 209 F.3d at 1242.  The fundamental substance of Ms. Darrisaw's claim is that PHEAA tried (and succeeded) in collecting debt from her that did not exist, even after acknowledging

23

that Ms. Darrisaw did not owe it anything.  This allegation sounds in bad faith, not negligence.[1]

Therefore, even applying the majority's interpretation of the fiduciary-obligation exception, I would reverse the District Court's dismissal of Ms. Darrisaw's complaint.  I respectfully dissent from the majority's decision to allow that dismissal to stand.

---

[1] The majority says that "Darrisaw's counsel did not contend that the complaint alleged the Agency knew the debt it sought to collect was nonexistent."  Maj. Op. at 14.  I did not understand counsel's position that way.  It's true that when Darrisaw's counsel was first asked whether the complaint alleges PHEAA "knew that [the debt] was nonexistent," counsel responded that it was "not entirely clear."  Oral Argument at 4:48–4:52 (Dec. 3, 2019).  But on rebuttal, counsel said that Darrisaw's allegation characterizing PHEAA's efforts as a "fake debt collection scam[,] . . . read in tandem with" other allegations in the complaint, suggest "there was no basis to believe that this debt existed . . . at all."  Id. at 30:05–31:15.  And even I were to ignore counsel's clarification of its position (as the majority opinion does), my analysis would remain the same.  As an initial matter, a pro se complaint need not be "entirely clear" to state a claim.  See Erickson, 551 U.S. at 94, 127 S. Ct. at 2200 (even "inartfully pleaded" pro se complaints can state a claim).  Beyond that, counsel's statement does not bind us because it was not a concession, let alone an unambiguous one.  See Crowe v. Coleman, 113 F.3d 1536, 1542 (11th Cir. 1997) ("[W]aivers and concessions made in appellate oral arguments need to be unambiguous to change the outcome of an appeal[.]").