[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14505

_____

D.C. Docket No. 3:17-cv-00751-MMH-PDB

RICO L. MITCHELL,

Plaintiff-Appellee,

versus

DUVAL COUNTY JAIL
CAPTAIN R. SISAK
SERGEANT PEOPLES

Defendants,

LT. SMITH,
SGT. CLARK,
OFFICER J.M. PERKINS,
DETECTIVE EILEEN SIMPSON,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 26, 2021)

Before BRANCH, GRANT, and TJOFLAT, Circuit Judges.

GRANT, Circuit Judge:

A simple rule has governed prison mail procedures in our Circuit for nearly 50 years: a prison official may not open an inmate's properly marked legal mail outside of his presence. But that is precisely what Rico Mitchell alleges happened—repeatedly—to his legal mail at the Duval County Jail. According to Mitchell, Detective Eileen Simpson ordered jail staff to confiscate and review all his incoming and outgoing mail. Following that order, J.M. Perkins, a jail officer and mail clerk, opened and read Mitchell's legal mail outside his presence. Mitchell complained, but the mailroom supervisor turned a blind eye, allowing the policy to proceed unchecked; he even threatened Mitchell to keep him from filing more grievances. Mitchell argues that all this conduct violated his First Amendment right to free speech and that it was clearly established that the officials' conduct was unlawful. We agree.

I.

We do not know much at this point about the facts underlying Rico Mitchell's claim; we only have three pages of handwritten allegations from his complaint. But we must assume, for this appeal, that those facts are true. From the complaint we gather that, at the time of the events, Mitchell was a pretrial detainee held in the Duval County Jail in Jacksonville, Florida. And for reasons not in the record, Detective Eileen Simpson took a particular interest in Mitchell's mail.

Simpson told a jail official, Sergeant Peoples, to "obtain," "seize," and "confiscate and review" all of Mitchell's incoming and outgoing mail. Mitchell

2

noticed. A mail clerk, J.M. Perkins, delivered a letter from Mitchell's attorney marked "Legal Mail" that had already been opened. When Perkins then asked Mitchell specific questions about his case, that made it "evident" that she had read at least part of the letter.

During the next year, Mitchell continued to experience issues with his mail; at least one time, for example, Perkins switched an outgoing letter to Mitchell's family with another inmate's letter. But when Mitchell tried to complain that his mail was being tampered with, jail staff "frustrat[ed]" the grievance procedures—Sergeant Clark, who was the mailroom supervisor, tried to "intimidate" Mitchell, intercepting his grievances and warning him to stop filing complaints.

Mitchell turned to the courts for help. He filed a pro se complaint (and then five amended complaints) alleging that Simpson, Perkins, Clark, and Peoples violated his constitutional rights. The district court dismissed the claim against Peoples for lack of service of process, but denied the motion filed by Simpson, Perkins, and Clark to dismiss on qualified immunity grounds.[1] Mitchell, the court said, stated "plausible First Amendment claims against Defendants," and the officers were thus "not entitled to qualified immunity at this stage of the litigation." They now appeal that decision.

## II.

We review de novo the district court's decision to deny qualified immunity on a motion to dismiss, accepting the factual allegations in the complaint as true

---

[1] The district court also denied qualified immunity to a fourth officer, Lieutenant Smith. But Mitchell stated in his brief on appeal that he is no longer pressing a claim against Smith. On remand, the district court is directed to dismiss Smith from this case.

and drawing all reasonable inferences in the plaintiff's favor. *See Paez v. Mulvey*, 915 F.3d 1276, 1284 (11th Cir. 2019). We also construe the allegations in a pro se complaint liberally, in the light most favorable to the plaintiff. *Darrisaw v. Pennsylvania Higher Educ. Assistance Agency*, 949 F.3d 1302, 1304 (11th Cir. 2020).

## III.

Any plaintiff suing a government official under 42 U.S.C. § 1983 has a steep hill to climb. The doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). So to defeat a qualified immunity defense, a plaintiff must establish two things: (1) that officials violated a federal statutory or constitutional right, and (2) that their conduct was clearly established as unlawful at the time. *Id*. In line with that dual inquiry, our analysis proceeds in two parts. We first consider whether Mitchell adequately alleged a violation of his constitutional rights. Because he did, we move on to decide whether the unlawfulness of the officials' conduct was clearly established. It was.

## A.

The Supreme Court has long recognized that an inmate retains those First Amendment rights that "are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Turner v. Safley*, 482 U.S. 78, 95 (1987) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). And pretrial detainees possess at least those constitutional rights that are enjoyed

by convicted prisoners. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). Two of those are the right of access to the courts and the right to free speech. And we have held that both rights are violated when an inmate's legal mail is opened outside of his presence. *See Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008); *Taylor v. Sterrett*, 532 F.2d 462 (5th Cir. 1976).[2] After all, the mail system offers inmates a crucial means of communicating with the outside world and—most relevant here—with their attorneys. *See Al-Amin*, 511 F.3d at 1334.

With that in mind, our Court has extended special constitutional protections to an inmate's legal mail. Nearly 50 years ago, in *Taylor v. Sterrett*, we held that inmates and pretrial detainees have a right of access to the courts that includes the protection of "uninhibited, confidential communications" with their attorneys.[3] 532 F.2d at 473. Because of that, jail officials were prohibited from reading incoming or outgoing legal mail. *Id.* at 469. But the only way for inmates to be sure that officials were not reading their legal mail was for them to receive it unopened. This posed a problem: providing unopened mail to inmates might weaken jail security by allowing prisoners a route to smuggle in contraband. *Id.* at 477. Balancing these interests, we held that jail officials could open—but not read—legal mail and even then only in the inmate's presence. *Id.* at 478. That way inmates could trust that their legal communications were confidential, but jail

---

[2] Our Court has adopted as binding precedent all decisions that the former Fifth Circuit handed down before October 1, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[3] In *Taylor*, prison officials challenged restrictions that the district court placed on the Dallas County Jail, which housed both convicted prisoners and pretrial detainees. 532 F.2d at 470 n.11.

officials could still preserve security. *Id.* at 477; *see also Guajardo v. Estelle*, 580 F.2d 748, 758 (5th Cir. 1978); *Lemon v. Dugger*, 931 F.2d 1465, 1467 (11th Cir. 1991) (reaffirming that it is a "violation of an inmate's constitutional rights for the prison officials to read legal mail").

We reaffirmed this rule in *Al-Amin v. Smith* when an inmate alleged that prison officials had violated his constitutional rights by repeatedly opening his legal mail outside his presence and supervising that practice. 511 F.3d at 1320, 1323. Citing *Taylor* and other binding precedents, we reiterated that a prisoner's access-to-courts right requires properly marked legal mail to be opened in his presence, and that a reasonable official would know that to be true. *Id.* at 1331–32. We also acknowledged that to bring a successful access-to-courts claim, though, a plaintiff must point to an "actual injury." *Id.* at 1332 (citing *Lewis v. Casey*, 518 U.S. 343, 349 (1996)). And the standard for that kind of injury is high—it requires that the prison officials' actions "impede[] the inmate's pursuit of a non-frivolous, post-conviction claim or civil rights action." *Wilson v. Blankenship*, 163 F.3d 1284, 1290 (11th Cir. 1998); *see Al-Amin*, 511 F.3d at 1332. A plaintiff must show, for instance, "a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials." *Wilson*, 163 F.3d at 1290–91. Because Al-Amin did not provide evidence of anything like that, his access-to-courts claim failed. *Al-Amin*, 511 F.3d at 1333.

But that did not mean that the officials in *Al-Amin* escaped responsibility. By opening Al-Amin's legal mail outside of his presence, they also violated a second constitutional right: his right to free speech. *Id.* at 1334. Like the right of

6

access to the courts, Al-Amin's right to free speech entitled him to use the mail to communicate confidentially with his attorneys. *Id.* at 1333–34. But unlike the access-to-courts claim, a free speech claim requires no additional allegation of "actual injury" because "protection of an inmate's freedom to engage in protected communications is a constitutional end in itself." *Id.* at 1334 (quoting *Jones v. Brown*, 461 F.3d 353, 359–60 (3d Cir. 2006)).

The only question for Al-Amin's free speech claim, we said, was whether the officials' practice of opening Al-Amin's clearly marked legal mail outside his presence was enough to chill, inhibit, or interfere with Al-Amin's ability to "speak, protest, and complain openly to his attorney" so that it infringed his right to free speech. *Id.* at 1334. We held that it did. Engaging in a "pattern and practice" of opening legal mail outside of an inmate's presence "interferes with protected communications, strips those protected communications of their confidentiality, and accordingly impinges upon the inmate's right to freedom of speech." *Id.* (quoting *Jones*, 461 F.3d at 359). In other words, by opening Al-Amin's legal mail outside his presence, the jail officials chilled his speech by undermining his confidence in the confidentiality of his communications. *Id.*

Here, Mitchell claims that Simpson's order to "confiscate and review" all his mail, Perkins's implementation of that order, and Clark's failure to stop that practice similarly violated his right to free speech. In *Al-Amin*, we decided that such conduct "sufficiently chills, inhibits, or interferes with Al-Amin's ability to speak, protest, and complain openly to his attorney so as to infringe his right to free speech." *Id.* We see no difference here.

According to his complaint, Simpson instructed jail staff to "confiscate and review" Mitchell's mail without his knowledge in July 2016. And sometime later, Mitchell discovered that Perkins had opened his legal mail outside of his presence—pursuant to Simpson's order, we assume. Clark, the mailroom supervisor, apparently knew about the illegal conduct after Mitchell filed grievances, but still failed to stop Simpson's policy from being implemented— instead, he threatened Mitchell, warning him against filing more grievances.

Broadly construing these allegations and making all inferences in Mitchell's favor—as we must when reviewing a motion to dismiss a pro se complaint—we believe he sufficiently alleged that Perkins engaged in a "pattern and practice" of opening his legal mail, that Simpson directed Perkins to do so, and that Clark knew about the policy but did his best to keep it going. *See Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008) (allowing supervisors to be held liable for the unconstitutional acts of their subordinates if "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so"). Because Mitchell alleges a pattern and practice of opening his legal mail outside his presence, and because we have said that such conduct "chills, inhibits, or interferes with" an inmate's speech, he has stated a valid claim for a violation of his free speech rights. *Al-Amin*, 511 F.3d at 1334.

### B.

Mitchell, as we have said, must do more than show that the officials' conduct violated a constitutional right. He also needs to demonstrate that the

8

"unlawfulness of their conduct was clearly established at the time." *Wesby*, 138 S. Ct. at 589 (quotations omitted). To reach this threshold, Mitchell must point to precedent that is "clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* at 590. He easily meets that burden here.

As we have already explained, for almost 50 years our Court has articulated a simple rule for jail and prison officials to follow when dealing with legal mail: "a prison official violates an inmate's constitutional rights when the official opens attorney mail outside the inmate's presence." *Al-Amin*, 511 F.3d at 1336 (citing *Taylor*, 532 F.2d 462; *Guajardo*, 580 F.2d 748). In 2008, our Court found that the officials in *Al-Amin* had "fair and clear notice" that this conduct was unconstitutional. *Id.* And if any doubt lingered before *Al-Amin*, we certainly made it clear in that case that such conduct was prohibited. *See id.* at 1332 ("a reasonable official would have known in 2004–05 that opening properly marked, incoming attorney mail outside the inmate's presence is unlawful and unconstitutional"); *id.* at 1336 ("our precedent, as discussed above, clearly establishes that a prison official violates an inmate's constitutional rights when the official opens attorney mail outside the inmate's presence"); *id.* at 1336 ("defendants had fair and clear notice that opening Al-Amin's attorney mail outside his presence was unlawful and violated the Constitution").

The defendants, though, insist that their conduct was not "clearly established" as unlawful because Perkins only opened one letter from Mitchell's attorney outside of his presence and our precedent has only held that a "pattern and

9

practice" of opening legal mail outside an inmate's presence violates his free speech rights. Because we read Mitchell's complaint to allege that the defendants engaged in a "pattern and practice," we do not need to consider this argument. We note, though, that *Al-Amin* plainly states that opening legal mail outside an inmate's presence is unlawful—it places no numerical qualifications on that rule. *Id.* at 1332, 1336.

Based on *Al-Amin*'s statements of law, any reasonable official at the time of these events would have known that opening Mitchell's legal mail outside of his presence was unconstitutional. We therefore affirm the district court's denial of qualified immunity to Simpson, Perkins, and Clark at this stage of litigation.

\* \* \*

Jail officials cannot lawfully open an inmate's properly marked legal mail outside of his presence. When they do, they open themselves up to liability. Based on the facts alleged in his complaint, Mitchell stated a valid claim against Perkins, Simpson, and Clark for infringement of his free speech rights and showed that their conduct was clearly established as unlawful. His suit against those defendants may proceed.

**AFFIRMED.**

10