[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13390

Non-Argument Calendar

_____

JUSTIN LASTER,

Plaintiff-Appellant,

*versus*

GEORGIA DEPARTMENT OF CORRECTIONS,
MACON STATE PRISON,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D. C. Docket No. 5:21-cv-00464-TES

_____

Before BRASHER, ABUDU, and ANDERSON, Circuit Judges.

PER CURIAM:

*Pro se* plaintiff Justin Laster's amended complaint alleged that his former employer, Georgia's Macon State Prison, violated a litany of federal and state laws by engaging in gender discrimination, disability discrimination, and retaliation. The district court dismissed that complaint; Laster appealed. We affirm with respect to the gender and disability discrimination claims, but we reverse the dismissal of the retaliation claim and remand for further proceedings in the district court.

Laster was a correctional officer. He had to perform a physically demanding job assignment for over a year, even though state prison policy instructed that assignments should be rotated every three months. The rotations did not occur because prison officials would not assign female guards to the strenuous roles. Laster considered this to be unlawful gender discrimination, and he let his supervisors know it. But his protests had no effect on his job assignment. Eventually, Laster suffered an on-the-job injury. After a series of medical appointments over the span of two months, Laster's doctor determined that Laster needed to avoid engaging in strenuous physical activity for several weeks. Laster provided his supervisors written documentation of those restrictions. Still, Laster continued to receive assignments that required heavy lifting.

About one month after notifying his supervisors of his physical restrictions, Laster missed four straight days of work. He received a letter from the prison warden stating that Macon State Prison considered Laster to have voluntarily resigned his employment. Laster responded in writing, explaining that he had not resigned his position. In that response, Laster also recounted the details of his on-the-job injury and restated his doctor's order to avoid physical exertion. Although Laster does not explicitly say so, his point seemed to be that he decided not to go to work those four days to aid his recovery. Laster does not say what happened next. The district court inferred that Laster was terminated; neither party contests that reading of the complaint.

Laster's operative complaint invokes several federal and Georgia state laws. He brings gender discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Fourteenth Amendment to the United States Constitution (via 42 U.S.C. § 1983), and Georgia's Fair Employment Practices Act. He says that the refusal to reassign him after his on-the-job injury was retaliation for accusing his supervisors of gender discrimination and thus violated Title VII. Finally, Laster asserts that the refusal to accommodate his post-injury physical limitations was disability discrimination in violation of Titles I and II of the Americans with Disabilities Act and Georgia's Equal Employment for the Handicapped Code.

The district court dismissed the operative complaint.

We review the district court's decision *de novo*. *Boyle v. City of Pell City*, 866 F.3d 1280, 1286 (11th Cir. 2017). We apply the same

standards as the district court, liberally construing Laster's *pro se* complaint and taking as true the factual allegations within that complaint. *Mitchell v. Peoples*, 10 F.4th 1226, 1229 (11th Cir. 2021).

For starters, Laster's ADA, section 1981, section 1983, and Georgia state law claims fail for lack of jurisdiction. Laster sued the Georgia Department of Corrections and the Macon State Prison, both of which are "arm[s] of the State" and thus enjoy Eleventh Amendment immunity from suit in federal court. *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc); *Myrick v. Fulton Cnty.*, 69 F.4th 1277, 1294 (11th Cir. 2023) ("An assertion of Eleventh Amendment immunity essentially challenges a court's subject matter jurisdiction." (citation omitted)). Neither Title I of the ADA, nor section 1981, nor section 1983 abrogate that immunity. *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001); *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989); *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir. 1981). Title II of the ADA abrogates Eleventh Amendment immunity only if the alleged misconduct constitutes disability discrimination under both Title II and the Fourteenth Amendment. *Black v. Wiginton*, 811 F.3d 1259, 1269 (11th Cir. 2016). But Laster's ADA theory of liability—that his supervisors did not accommodate his physical limitations—is not a Fourteenth Amendment violation. *See Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008). Finally, nothing in the Georgia statutes under which Laster sues waives Eleventh Amendment immunity, *see* Ga. Const. art. I, § II, para. IX, cl. (f) (prohibiting legislative waivers of "any immunity provided . . . by the United

States Constitution"), nor have defendants otherwise consented to suit in federal court.

The district court had jurisdiction over Laster's Title VII gender discrimination and retaliation claims because those claims are not barred by the Eleventh Amendment. *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976); *see Wu v. Thomas*, 863 F.2d 1543, 1549–50 (11th Cir. 1989). But a court's ability to hear the Title VII claims is only helpful to Laster if he carries his burden of alleging "enough facts to state a claim to relief that is plausible on its face, i.e., facts that will nudge a plaintiff's claims across the line from conceivable to plausible." *Holland v. Carnival Corp.*, 50 F.4th 1088, 1093 (11th Cir. 2022) (cleaned up).

Both Title VII claims require Laster to plausibly allege that he suffered an adverse action. *See Holland v. Gee*, 677 F.3d 1047, 1056 (11th Cir. 2012) ("In a Title VII case, an adverse employment action is not only an element of the prima facie case, but also of the claim itself." (internal citations omitted)). What constitutes an adverse action depends on the particular Title VII claim. In the discrimination context, a plaintiff must plausibly allege that his or her employer materially and negatively altered the terms or benefits of the plaintiff's employment. *See Monaghan v. World Pay US, Inc.*, 955 F.3d 855, 860 (11th Cir. 2020) (stating that adverse employment actions "consist of things . . . like terminations, demotions, suspensions without pay, and pay raises or cuts . . . ."). The adverse action standard for Title VII retaliation claims is "decidedly more relaxed . . . ." *Crawford v. Carroll*, 529 F.3d 961, 973 (11th Cir. 2008). An action is

sufficiently adverse for purposes of a Title VII retaliation claim when that action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citation omitted). Thus, the same action could satisfy the adverse action element of a retaliation claim but not a discrimination claim.

Laster relies on the same allegation—that he was assigned to a physically demanding post—for the adverse action element of both Title VII claims. He says that assignment was always discriminatory because his supervisors allowed female employees to avoid similar duties. He says that assignment became retaliatory because his supervisors kept him in that strenuous job, even after he hurt himself and was told by a doctor to avoid physical exertion, in order to punish him for accusing them of gender discrimination.

The district court correctly concluded that Laster's alleged adverse action was insufficient to maintain a Title VII discrimination claim. Requiring an employee to perform an undesirable job is not an adverse employment action for the purposes of a discrimination claim, as long as there is no allegation that the assignment came with any material change in the terms or benefits of employment (e.g., a reduced salary). *See Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587–89 (11th Cir. 2000), *abrogation on other grounds recognized by Crawford*, 529 F.3d at 970–74 & n.14; *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1203 (11th Cir. 2013) ("Work assignment claims strike at the very heart of an employer's business judgment

and expertise . . . . And it is by now axiomatic that Title VII is not designed to make federal courts sit as a super-personnel department that reexamines an entity's business decisions." (internal quotation marks and citations omitted)).

The district court erred, however, in dismissing Laster's Title VII retaliation claim. The sole basis for the dismissal was the district court's conclusion that Laster failed to plausibly allege a sufficiently adverse action. The district court read Laster's complaint as "only mention[ing] a retaliatory constructive discharge as the only possible adverse employment action" and then relied on the Supreme Court's decision in *Green v. Brennan*, 578 U.S. 547 (2016), to conclude that, because Laster never actually quit his job, he did not sufficiently plead the elements of constructive discharge. *See Green*, 578 U.S. at 555 (stating that an employee "actually resign[ing]" is an element of a constructive discharge claim).

We think the district court read Laster's complaint too narrowly. It is true that Laster's operative complaint alleged that his supervisors sought "to force [him] out of [his] employment and thus constructively discharged" Laster. But Laster alleged that his supervisors did so "by subjecting [him] to unfair, unsafe working conditions . . . ." Giving Laster the appropriate amount of leniency as a *pro se* litigant, we do not read his complaint as solely and narrowly alleging a claim under the constructive discharge doctrine, but instead as more broadly attacking his working conditions and his supervisors' motivations for creating those conditions. And that type of Title VII retaliation claim is properly analyzed under the

"decidedly more relaxed" standard set forth in *Burlington*. *Crawford*, 529 F.3d at 973; *see Monaghan*, 955 F.3d at 861–63.

Applying the *Burlington* standard to Laster's Title VII retaliation claim, we cannot agree with the district court that Laster failed to plausibly allege an adverse action. Doing so would require us to hold that, as a matter of law, no reasonable person in Laster's shoes would have felt "dissuaded . . . from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68 (internal quotation marks and citation omitted). But the reasonableness of an employee's fear of reprisal is generally a question of fact for a jury. *See Monaghan*, 955 F.3d at 862–63 (acknowledging that the "'well might have dissuaded' standard is contextual and remanding retaliation claim for trial (quoting *Burlington*, 548 U.S. at 69)). And we are not prepared to say that forcing an employee who has complained of discrimination and suffered an on-the-job injury to continue working a physically demanding assignment is such a "petty and trivial action[]" that it can never form the basis of a Title VII retaliation claim. *Crawford*, 529 F.3d at 973 n.13. Accordingly, we reverse the district court's dismissal of Laster's Title VII retaliation claim.

Having addressed the claims dismissed by the district court, we note that throughout his *pro se* briefing in this Court, Laster refers to other labor laws (*e.g.*, the Fair Labor Standards Act of 1938, the Age Discrimination in Employment Act of 1967, and the Rehabilitation Act of 1973). If those references are meant to be separate legal claims, we do not consider them because those claims were not raised in the operative complaint or otherwise addressed by the

22-13390                 Opinion of the Court                         9

district court. *Ramirez v. Sec'y, U.S. Dep't of Transp.*, 686 F.3d 1239, 1249 (11th Cir. 2012) ("It is well-settled that we will generally refuse to consider arguments raised for the first time on appeal.").

The judgment of the district court is **AFFIRMED IN PART** and **REVERSED IN PART**. Laster's Title VII retaliation claim is **REMANDED** to the district court for further proceedings consistent with this opinion.